CITY OF ORANGE v. RECTOR et al.
(No. 406.)

(Court of Civil Appeals of Texas. Beaumont.
June 4, 1918.)

1. MUNICIPAL CORPORATIONS ⊚⇒38—EXTEND-
ING LIMITS FOR SPECIAL PURPOSES—CON-
STRUCTION OF STEAM RAILROADS.

Vernon's Sayles' Ann. Civ. St. 1914, art.
783a, providing that cities on navigable streams
and under special charters may extend their
limits for the purpose of acquiring land for
improvements of navigation, does not authorize
a city upon passage of an ordinance thereun-
der to construct a steam railroad along a street
included in such extended limits.

2. MUNICIPAL CORPORATIONS ⊚⇒671(7)—
STREETS — CONSTRUCTION OF RAILROADS—
INJUNCTION.

The owners of residence property abutting
a street have the right to enjoin the city from
constructing a steam railroad thereon without
lawful authority, upon showing special damag-
es to property and personal discomfiture, wheth-
er plaintiffs owned the fee to the street or not.

3. EMINENT DOMAIN ⊚⇒119(2) — "TAKING"
PRIVATE PROPERTY—COMPENSATION—USE OF
STREET.

The construction of a steam railroad upon
a street or highway, the fee of which is owned
by abutting owners, constitutes a taking of
private property for public use which Const.
art. 1, § 17, provides cannot be done without
making adequate compensation.

[Ed. Note.—For other definitions, see Words
and Phrases, First and Second Series, Taking.]

4. PLEADING ⊚⇒428(3) — PETITION—CONCLU-
SION—SUFFICIENCY.

Pleading a conclusion that petitioners for
injunction were owners of the fee in a street in
the absence of special exception thereto or gen-
eral denial held to warrant introduction of evi-
dence of ownership of fee.

Appeal from District Court, Orange Coun-
ty; W. T. Davis, Judge.

Action by B. Rector and others against the
City of Orange. Judgment for plaintiffs, and
defendant appeals. Affirmed.

J. B. Bisland, of Orange, for appellant.
Smith & Crawford, B. F. Pye, and John Han-
cock, all of Beaumont, for appellees.

HIGHTOWER, C. J. This appeal is from
an order made by Hon. W. T. Davis, judge
of the First judicial district of this state, at
chambers, temporarily enjoining the city of
Orange, Tex., from building and constructing
a steam railroad in what is designated in
the record in this case as Alabama street,
which lies just south of and outside of the
corporate limits of the city of Orange.

The action was commenced by B. Rector,
Chas. Harris, F. M. Hinton, George Nince, A.
D. Williams, and Harry Watson, who, as
plaintiffs, presented to said Hon. W. T. Da-
vis, judge of said district court, at chambers,
on May 9, 1918, their petition, wherein said
plaintiffs complained of the city of Orange,
B. F. Hewson, its mayor, Felix Weil, John
W. Hart, E. V. Folsom, and Hugh Cox, al-
dermen of said city, the purpose of the ac-
tion being to enjoin the city of Orange from
constructing a steam railroad in said Ala-
bama street.

Upon presentation to said judge of said
petition a temporary restraining order was
by him granted, and the prayer for tempo-
rary injunction was set for hearing at a la-
ter date. Thereafter, on May 14th, the mat-
ter came up for hearing on the prayer for
temporary injunction, and the plaintiffs, ap-
pellees here, filed their amended original pe-
tition, in which they alleged, substantially,
that they were resident citizens of Orange
county, Tex., and that the city of Orange
was a municipal corporation duly chartered
and organized and operating under a special
charter, and that the said Hewson was the
mayor of said city, and the other defendants
above named were the aldermen, respective-
ly, thereof; that each of said plaintiffs own-
ed property abutting on said Alabama street,
some of which property was described by lot
and block number, and some of it by metes
and bounds, and all of which was described
to be a part of the Gilmer First Cove addi-
tion to the city of Orange. It was further
alleged that said Alabama street is a nar-
row street, 40 feet in width, and that all that
portion of said street, as well as the prop-
erty of the plaintiffs concerned in this pro-
ceeding, lies south of the corporate limits of
said city of Orange and entirely without said
limits, and that said addition was laid out
by A. Gilmer according to a plat or map, and
that said lots and tracts of land owned by
the plaintiffs and abutting on said Alabama
street were conveyed to them by and through
the said Gilmer, who had subdivided said ad-
dition, as said property was shown and de-
scribed on said plat or map, and that in mak-
ing said conveyances said Alabama street was
clearly shown by said map or plat, and was
recognized by the said Gilmer in making such
conveyances, and that said lots were ·con-
veyed as abutting said street, and in such
manner and under such conditions as made
said street an appurtenance to said lots, and
"as conveyed to said owners of said lots, a
property in fee to said street, and an ease-
ment in said street." It was further alleged
by the plaintiffs that said Alabama street
had never been dedicated for public use, and
had never been recognized or adopted by any
public authority or worked, or any public su-
pervision or control exercised over same by
any officer or public official, and that no per-
mission or authority had ever been given to
the defendants or any of them to build a
railroad in or upon said street; and it was
further alleged that said Alabama street is
owned individually and privately by the
plaintiffs and others situated like them hav-
ing property abutting thereon. It was fur-
ther alleged that until recent years the Gil-
mer subdivision in question was vacant prop-
erty, but afforded pleasant and convenient

sites for suburban homes, and that plaintiffs selected their property here concerned, as did others, for homes, by reason of its pleasant and suitable location for such purposes, and that practically the only value said property has is for residence purposes, and that the building of a steam railroad such as the city of Orange contemplated building would add no value to the property of the plaintiffs for any purpose, but, on the contrary, would practically destroy the only value such property has or will have. It was further alleged that the city of Orange was threatening to construct a railroad for terminal and other purposes along said Alabama street for its full length, which was alleged to be about 1,000 feet, and that it was the intention of said city to connect said railroad, when so constructed, with all the leading railroads entering the city of Orange, and that it was the intention of said city, when said railroad should be so constructed along said Alabama street, to operate innumerable and heavy freight trains on said track, both by day and by night, and that it would be necessary, in constructing said railroad, to change the grade of said Alabama street, and that the trains would be operated over said road, if permitted to be constructed, both by day and by night, and that plaintiffs would be greatly vexed and harassed by the noise and vibration caused by the operation of such heavy traffic along said narrow street, and in close proximity to their residences, and that their homes would be threatened with destruction by fire, which might escape from the engines propelling said trains of cars, and that soot, smoke, and cinders would envelop their homes, and that the lives of their children would be seriously endangered by trains passing along said street in front of the residences of the plaintiffs, and that the pleasant views around their respective residences would be almost completely destroyed if said railroad should be constructed and operated in said Alabama street. It was further alleged that the city of Orange was without any authority whatever to construct a steam railroad in or upon said Alabama street in front of the property of the plaintiffs, and that they nor either of them had ever consented to the construction of said railroad by said city of Orange, nor had said city of Orange ever legally acquired, by gift, purchase, or condemnation, any part of said Alabama street, and that the operation by said city of a railroad in and upon said Alabama street, such as said city was threatening and contemplating, would constitute a great and irreparable injury and damage to the plaintiffs, and would constitute a public nuisance.

There were other allegations in the petition charging, substantially, that it was unnecessary for the city of Orange to construct said railroad along said Alabama street, and that, if it was necessary or desired by the city that a railroad should be constructed, then the same could be constructed over another and different route, which would obviate the necessity of damaging plaintiffs, and at the same time the city would be afforded the use of a railroad, if it so desired. There were other allegations in the petition which we deem it unnecessary to here mention.

The prayer was that a temporary injunction be granted restraining and enjoining said defendants from constructing said railroad or laying tracks therefor, or assembling material on said Alabama street for such construction, or proceeding in any way to do any of such things on, over, or across any part of said Alabama street, and that on a final trial plaintiffs have judgment perpetuating such injunction and for such other and further relief as the facts and the law might justly entitle them to have.

On the day set for the hearing of the application for injunction the defendants filed their answer, which consisted of a general demurrer and special denials of certain of the allegations contained in the plaintiffs' petition. There were no special exceptions nor a general denial in the answer. The special denials might be substantially stated as follows:

(1) That the construction of the railroad contemplated by the city of Orange along Alabama street would not damage or cause any depreciation in the value of the property of any of the plaintiffs, but, on the contrary, that the construction of such railroad would enhance the value of the property of the plaintiffs.

(2) That the residences of the plaintiffs would not be injured by the construction or operation of such railroad.

(3) That it was not contemplated that such railroad, when constructed, would be used as a switch track, and that, in fact, it would not be used for such purposes, but only as a terminal for the purpose of transporting trains from the different railroads entering the city of Orange, and that there would be no such noise from the passage of such trains along said Alabama street as would be reasonably calculated to disturb the plaintiffs.

(4) That plaintiffs' premises would not be endangered by fire on account of the operation of trains along said Alabama street, for the reason that the engines propelling such trains would be oil burners, and that no sparks would escape therefrom.

It was further substantially alleged in the answer that the city of Orange had issued bonds in the sum of $150,000 for the purpose of constructing public slips, docks, wharves, etc., and a tract of land consisting of 85 acres had been donated to said city, which tract of land lies south of said city, and that the same was donated and conveyed to the city for the purpose of enabling the city to

construct wharves, docks, etc., on the Sabine river, a navigable stream, upon which said city is situated, and that the city of Orange had expended in improving said 85 acres of land about $140,000, and that it had constructed and dug on said land a slip extending from the Sabine river into said land to a distance of 3,000 feet, of a width of 278 feet, and a depth of 25 feet, and that the city had constructed and built along the south bank of said slip a wharf 6,000 feet in length, and had also constructed and built a steel warehouse of 6,000 feet in length, and that, unless said slip, docks, and wharves can be connected by a transfer or terminal track with trunk lines of the different railroads leading into the city of Orange, such slip, docks, and wharves would be useless, and of no use to said city or any one else; and it was further alleged in the answer that the board of city commissioners of the city of Orange, in the exercise of a discretion allowed them by law, had determined that the proposed line of railroad along Alabama street would be the best and most practicable route for said track, and that it could be laid with less cost along that route than on any other route; that to reach said slip and docks by any other route the entire route would pass over private property, and would necessitate curves and reverse curves that would make the operation of cars on said track very impracticable; and it was further answered that, if the plaintiffs should be granted the relief sought by them, great and irreparable injury would be worked upon the citizens of Orange and said city, etc. There were other allegations in the answer which we consider immaterial and unnecessary further to mention.

At the hearing there was practically no evidence introduced, the judge acting almost entirely upon the pleadings as they then stood, the substance of which we have set out above. It was agreed, however, by the parties that Alabama street, above mentioned, lies wholly outside of the corporate limits of the city of Orange as defined by its charter, but that said street does lie within an extension of the city limits of said city as made by an ordinance duly passed by said city, and as authorized by chapter 25 of the Acts of the Thirty-Third Legislature (Vernon's Sayles' Ann. Civ. St. 1914, arts. 783a, 783b).

[1] The appellant, city of Orange, in claiming a right to build and construct in and upon Alabama street a steam railroad, over the protest of the plaintiffs in this case, must rely upon article 783a, Vernon's Sayles' Texas Civil Statutes, because, without invoking the provisions of that article, there could be no semblance of any right whatever in the city of Orange to build a steam railroad along Alabama street, in disregard of and over the protest of property owners and residents on that street, since it is admitted that said street and the property in question abutting thereon lies wholly and entirely beyond the corporate limits of said city, as fixed by its charter.

Article 783a, referred to, reads as follows:

"Art. 783a. *Cities on Navigable Streams and under Special Charters May Extend Limits; May Acquire Land for Improvement of Navigation, etc.*—That from and after the passage of this act the right, power and authority is hereby given to the city council of all cities situated along or upon navigable streams in the state of Texas, and acting under special charters, to extend the limits of said city for the limited purposes named in this act, so as to include in said city the said navigable streams and the land lying on both sides thereof for a distance of twenty-five hundred (2,500) feet from the thread of said stream to a distance of twenty (20) miles or less in an air line from the ordinary boundaries of said city, either above or below the boundaries of said city, or both, by the passage of an ordinance extending the boundaries of said city to include the territory aforesaid, being a strip five thousand feet wide and twenty miles, more or less, in length, or so much thereof as the city council may consider advisable to add to the limits of said city; and from and after the passage of said ordinance the city council of said city shall have the right, power and authority to secure land within the territory so added to said city by purchase, condemnation or gift for the improvement of the navigation of said navigable stream or waters, either by the United States or by said city, or by any navigation or other improvement district, and for the purpose of establishing and maintaining wharves, docks, railway terminals, side tracks, warehouses or any other facilities or aids whatsoever to either navigation or wharves; and for these purposes the corporate limits of said cities shall, upon passage of said ordinance, be extended from the existing limits so as to include all the land added to said city by said ordinance, provided that said city shall have no right to tax the property over which such boundaries are so extended, unless such property be within the line and within the limits of the general city boundaries or limits; and provided further, that after the passage of said ordinance adding to said city, said city shall have and exercise within said limits the fullest and most complete power of regulation of navigation and of wharfage and of wharfage rates, and of all facilities, conveniences and aids to wharfage * * * consistent with the Constitution of this state, and shall further have authority by current ordinances or otherwise, to police the navigation of said waters and the use of said wharves and facilities and aids to wharfage and navigation, provided in all condemnation proceedings under this act the same procedure shall apply that now applies in condemnation of land by cities for the purchases of streets."

We do not understand counsel for appellants to contend that the city of Orange would have any authority to construct a railroad over Alabama street, as it contemplates doing, but for the language of the article above quoted, but it does seem to be his contention that when the city of Orange passed an ordinance extending its city limits for navigation purposes so as to include the 85-acre tract of land donated to it for such purposes, and lying south of the city, and which extension included Alabama street, then the city had the legal right to at once construct said railroad track along said Alabama street, provided the city authorities,

in the exercise of a sound discretion, selected that route for the railroad. There is no allegation in the answer that the city had ever acquired any part of Alabama street by purchase, condemnation, or gift, and there is no contention that the city of Orange has any authority whatever over Alabama street or other property outside of the ordinary limits of said city, other than as would pertain to the enforcement of the use of such street and property for navigation or wharfage purposes or in aid thereof; and since the article above quoted clearly contemplates that cities situated as is the city of Orange can only extend their ordinary limits for the limited purposes therein mentioned, and since it clearly appears that property, to be acquired for such purposes by such cities, must be acquired either by gift, purchase, or condemnation before the city would have the right to the use of the same, we cannot understand just how it can be contended by counsel for the appellants here that the city of Orange has ever acquired the legal right from any source whatever to construct a steam railroad along Alabama street, in the face of the sworn allegations in the plaintiffs' petition that no portion of said street had ever been acquired by said city, nor any right to occupy the same by the construction of a railroad, either by gift, purchase, or condemnation, and if our construction of the article above quoted be correct, the city of Orange can have no legal authority whatever to build a railroad on said Alabama street, but would be a trespasser there in every sense of the word should it attempt to do so.

[2] The city of Orange would have no more authority to build a railroad over said street than would be possessed by any railroad company, and surely it cannot be successfully contended that a railroad company would be authorized to build and construct a railroad on such street, over the protest of abutting property owners, and if a railroad company should attempt to do so, its act would be clearly unauthorized and illegal, and if serious damage to property owners abutting on said street should be threatened thereby, we think that a court of equity would be authorized to enjoin the construction of such railroad on the ground that it would be a public nuisance, and that this would be so whether the abutting owners owned the fee in such street or not.

Mr. Lewis, a standard writer on Eminent Domain, says:

"If a railroad of any kind is laid and operated in a street without lawful authority, it is a public nuisance, and an abutting owner who suffers special damages therefrom may, according to the weight of authority, enjoin its operation and compel its removal. It is immaterial on what the want of authority depends. It may be the lack of any valid or sufficient legislative or municipal grant, or the expiration of the franchise, or the fact that it is for private use. So the construction of a railroad without authority may be prevented. If the abutter's easements of light, air, and access are interfered with, or the ratable or salable value of the abutting property diminished, then there is a special damage within the rule."

See Lewis on Eminent Domain (3d Ed.) art. 909. Many authorities are cited by the author in support of the text just quoted, but we deem it unnecessary to discuss them severally here, and think that there can be no question but what the rule laid down by the author is supported by the great weight of American authority, and that it is a sound and salutary rule. Therefore, since it is admitted that Alabama street, along which the city of Orange would construct the railroad in this instance, lies entirely beyond the city limits of said city, and since the pleadings in this case and the evidence, such as there was, leave no doubt that the city of Orange has never acquired the right to occupy said Alabama street by the construction of a steam railroad therein, either by gift, purchase, or condemnation, and since it is without dispute that the plaintiffs are the owners of residence property abutting upon said street, and in front of which the city of Orange was threatening the construction of such railroad and since the petition of plaintiffs clearly shows that they would suffer special damages, not only to their property abutting on said street, but also much personal discomfiture and inconvenience, we think that the district judge was authorized to temporarily enjoin the construction of such railroad on said street, as he did, until such time as said city might acquire, by some legal means, the right to enter upon said street and construct such railroad, and we think that this must be so without regard to the question of any ownership in the plaintiffs of the fee in said street.

In what we have said in this connection we are not unmindful of the practically unbroken line of decisions in this state to the effect that, where a railroad company lawfully acquires from a city authority to construct a railroad in or over a street or streets of the city having control and supervision thereof, such railroad cannot be enjoined, except, perhaps, in an extraordinary case, from laying its track in such streets, in pursuance of the authority granted by such city, although it may be over the protest of the property owners whose property abuts on such streets, unless such property owners also own the fee title to the street, in which last-named instance compensation would have to be first made to the property owner before the railroad company would be permitted to enter. But this is because the railroad company, having permission properly given by the city, would not be in the attitude of a trespasser upon the street so entered, but would be there with legal authority, that is, a franchise granted by the city over the streets subject to its supervision and jurisdiction, and since such an

entry by the railroad company, in the absence of a taking of the property belonging in fee to the abutting property owners, would be with lawful authority, then the abutting property owner would have no right, under the rule adopted in this state, to enjoin the railroad company from building the railroad, even though a damaging to the property of the abutting owner may be done by such construction. But in this case the city of Orange, if we construe article 783a, above quoted, correctly, would be a naked trespasser were it to construct a railroad in Alabama street, and the plaintiffs showing by their petition that they would be specially damaged by the construction of such a railroad, both in their property rights and otherwise, the district judge was, in our opinion, authorized to grant the injunction, regardless of whether the plaintiffs in this case owned or claimed any title in fee to said street.

[3] But it is contended by the appellees that the district judge was authorized to grant said injunction, as he did, for the reason that plaintiffs alleged in their sworn petition in this case that they were not only abutting property owners on said Alabama street, but that they also owned the fee in said street as well, and that they were entitled to be protected as against the threatened unlawful act on the part of the city of Orange, as the owners of the fee in said street, and advance the proposition that the construction of a steam railroad in a street or highway in which abutting owners also own the fee in the street would amount to a taking of the property of such property owner, and that such could not be done until such property owner and owner of the fee in the street should be first compensated for such taking, and invoke article 1, § 17, of the Constitution of this state, in support of their proposition. No useful purpose would be served by entering into a discussion of the protection which is afforded property owners by said article of our Constitution. Suffice it to say that it is well settled by the decisions of the Supreme Court of this state construing that article of our Constitution that the contruction of a steam railroad upon a street or highway, the fee of which is owned by abutting property owners, constitutes a "taking" of the property, as the word "taking" is used in the Constitution, and that such cannot be done until the owner has been first compensated or a deposit of money has been made for his benefit. For a full and very thorough consideration of this point see McCammon & Lang Lbr. Co. v. Trinity & Brazos Valley Railway Co., 104 Tex. 8, 133 S. W. 247, 36 L. R. A. (N. S.) 662, Ann. Cas. 1913E, 870.

[4] The only question that we are concerned with in this connection is whether the petition of plaintiffs in this case alleged ownership in fee to Alabama street.

As we have stated above, the language of the petition on that point is as follows:

"And said lots were conveyed by and under said A. Gilmer, who subdivided said addition, to these plaintiffs by conveyances recognizing said street and in accordance with said subdivision, and said lots were conveyed as abutting said street and in such manner and under such conditions as made said street an appurtenance to said lots and as conveyed, to said owners of said lots, a property in fee to said street and an easement in said street."

Appellants have filed no brief, formal or informal, in this court, and were not required to do so under the rules governing appeals from orders of this character, but counsel for appellants suggested during oral argument before us that the allegation just quoted was nothing more than an argument or conclusion on the part of the pleader, and that it was not a specific statement of facts showing that plaintiffs or any of them owned the fee to any portion of Alabama street; while, on the other hand, it is contended by appellees that a fair and proper construction of the language just quoted leads to the inevitable conclusion that it was clearly the intention of the pleader to allege title in fee to said street to be in the plaintiffs, and that the allegations, in view of the state of the pleadings, were sufficient as a pleading to the effect that plaintiffs were the owners in fee of Alabama street opposite their several residences, as well as the owners of an easement therein.

As stated in the beginning, there were no special exceptions presented by the answer for appellants, but only a general demurrer, and we have had some difficulty in determining whether the allegations just quoted were sufficient in these circumstances as a plea of ownership in fee to Alabama street on the part of the plaintiffs, or any of them, when tested solely by a general demurrer, and after a full consideration of the question we have reached the conclusion that the allegation in this connection cannot be said to be a specific and clear statement showing ownership in fee in Alabama street in any of the plaintiffs, but that nevertheless it was the intention of the pleader to allege ownership in fee in said street in the plaintiffs, but that such allegations in that connection were more in the nature of a conclusion on the part of the pleader than a statement of the facts, and that, had the point been raised by special exception on the part of appellants, plaintiffs ought to have been required to allege the facts more specifically upon which said plea of ownership in the fee of said street was based.

Now, the question is this: What effect should be given to these general allegations as to the ownership of the fee in the street, in the absence of a special exception challenging them?

It is not necessary to state that the general demurrer admits the truth of the allegations thus generally made, because we under-

stand the rule to be that a general demurrer, in cases of this character, can only be construed to mean that the pleader admits the truth of such facts as are properly and well pleaded, but nevertheless, if enough has been stated by the plaintiffs on this point to make it reasonably appear that ownership in fee to Alabama street was claimed by them, then, in the absence of a special exception, they ought to have been permitted to introduce evidence in support of their allegations, though general, that they were the owners in fee to Alabama street, and such proof, if made, would have been conclusive upon that point, in so far as the question of pleading is concerned, and in view of the pleadings as thus made, and in view of the fact that there was no general denial interposed by the appellants, but only a special denial of certain allegations contained in the plaintiffs' petition, we think that the court was authorized and did very probably construe the language of the petition as alleging a fee-simple title in plaintiffs to Alabama street in front of their premises, and that, since there was no denial of that fact by the answer of the defendants, the judge below was authorized to grant the injunction in this case upon the theory that the plaintiffs were the owners of the fee in Alabama street abutting their several properties, and that the plaintiffs in this case were protected against the threatened act of the city of Orange, which under the Constitution of this state would amount to a taking of the property of the plaintiffs, without first making compensation therefor, or depositing money for their benefit.

Appellants' counsel, in argument before this court, stated that he considered that the opinion of this court in the case of City Commissioners of the City of Port Arthur v. Fant, reported in 193 S. W. 334, was decisive of the questions at issue on this appeal, and that, if this court adhered to the law as laid down by it in that case, then the judgment in this case should be reversed.

We cannot agree with this contention, and after a careful consideration of the opinion in the Fant Case, supra, we have concluded that neither of the two vital questions presented in this case were in that case, or that either of the questions here was there discussed at all. In the Fant Case there was no pretense that the plaintiffs, by their petition, claimed any ownership in the fee to the street, and the case on that point was decided as if it had been admitted that the plaintiffs had no fee ownership in the street; and the other question in that case was simply whether an abuse of discretion was shown on the part of the city commissioners of the city of Port Arthur (that city being under the commission form of government) in constructing or determining to construct a certain ditch for drainage purposes in one of the streets of that city. There was no question whatever that the property there in question was wholly within the city of Port Arthur for all purposes, and there was no question about the right of the city, within a reasonable exercise of its authority, to do whatever was necessary and proper for the drainage, etc., of the city. In short, as we have just stated, the Fant Case has no application whatever to either of the vital questions upon which we have decided this case, and we dismiss the contention without further comment.

From what we have said it follows that this court is of the opinion that the district judge was not in error in granting the temporary injunction appealed from, and the judgment is therefore affirmed.