CITY OF NASSAU BAY, Appellant,

v.

Dr. Eugene WINOGRAD, Trustee,
Appellee.

No. 17396.

Court of Civil Appeals of Texas,
Houston (1st Dist.).

April 26, 1979.

Rehearing Denied May 24, 1979.

McConnico, Gregg & Kennamer, Dick H. Gregg, Jr., Houston, for appellant.

Stolbun & Shaw, Sam L. Stolbun, Bellaire, for appellee.

Before COLEMAN, C. J., and DOYLE and PEDEN, JJ.

DOYLE, Justice.

In a proceeding pursuant to the Uniform Declaratory Judgment Act, the appellee, Dr. Eugene Winograd, Trustee, (Dr. Winograd) sought a construction of Articles 1183–1187, V.A.C.S., and of Ordinance 77–194 of the City of Nassau Bay, appellant, (Nassau Bay) as they applied to certain property owned by Dr. Winograd. From an adverse summary judgment, Nassau Bay appeals.

The material facts are undisputed. On or about December 7, 1976, Dr. Winograd acquired 65 acres of land in the Clear Lake area of Harris County, Texas, for the purpose of development, including apartments, shopping centers and office buildings. On June 13, 1977, Nassau Bay, through its city council, enacted Ordinance 77–194, which purported to annex an area of land lying on both sides of Cow Bayou under the authority of Articles 1183–1187, V.A.C.S. The major portion of Dr. Winograd's 65 acre tract is included within the boundaries of the annexed area. Dr. Winograd had undertaken and completed some building projects in the subject area at the time Nassau Bay passed Ordinance 77–194. Controversy arose when Nassau Bay began to require that Dr. Winograd comply with all of its general regulatory ordinances, including ordinances on zoning, building codes, subdivisions, safety regulations and swimming pools. Nassau Bay contends that it has the right of general regulatory control over Dr.

Winograd's tract of land by virtue of the language of Article 1186, V.A.C.S., and that the district court did not have jurisdiction to hear and determine the cause. Dr. Winograd argues that Articles 1183 through 1187, V.A.C.S., are for the limited purpose of annexation to promote and regulate navigation and wharfage and do not require him to comply with the general regulatory control of Nassau Bay's Ordinance 77–194.

The statutes in question read as follows:

Art. 1183. Extension of limits

The city council of all cities situated along or upon navigable streams in this State, and acting under special charters, may extend the limits of said city for the limited purposes named in the four succeeding articles, so as to include in said city the said navigable streams and land lying on both sides thereof for a distance of twenty-five hundred feet from the thread of said stream to a distance of twenty miles or less in an air line from the ordinary boundaries of said city, or both, by the passage of an ordinance extending the boundaries of said city to include the territory aforesaid, being a strip five thousand feet wide, and twenty miles, more or less, in length, or so much thereof as the city council may consider advisable to add to the limits of said city. Acts 1913, p. 47.

Art. 1184. Powers

The city council of said city shall have the right, power, and authority to secure land within the territory so added to said city by purchase, condemnation or gift, for the improvement of the navigation of said navigable streams or waters either by the United States or by said city, or by any navigation or other improvement district, and for the purpose of establishing and maintaining wharves, docks, railway terminals, side tracks, warehouses or any other facilities or aids whatsoever to either navigation or wharves. In all condemnation proceedings under this law the same procedure shall apply that now applies in condemnation of land by cities for the purchase of streets. Id.

Art. 1185. Status of territory

For the purposes specified, the corporate limits of said cities shall, upon passage of said ordinance, be extended from the existing limits so as to include all the land added to said city by said ordinance. Such city shall have no right to tax the property over which such boundaries are extended, unless such property is within the line and within the limits of the general city boundaries or limits. Id.

Art. 1186. Regulation

After the passage of the ordinance adding such territory to said city, said city shall have and exercise the fullest and most complete power of regulation of navigation and of wharfage and of wharfage rates and of all facilities, conveniences and aids to wharfage or navigation consistent with the Constitution of this State, and shall further have authority by criminal ordinances or otherwise, to police the navigation of said waters and the use of said wharves and facilities and aids to wharfage and navigation. Id.

Art. 1187. Restrictions

The power granted in the four preceding articles shall not authorize the extension of the territory of any city for the limited purposes named so as to include any land which is already part of any other city or town corporation whether incorporated under the general laws or under special law, or any land at the time belonging to any other city or town. Id.

Pursuant to the foregoing articles, the City Council of Nassau Bay passed, approved and adopted on June 13, 1977, Ordinance 77–194 which took effect on such date. In summary the ordinance followed the exact procedure outlined by the articles for the annexation of land along both sides of the navigable stream of Cow Bayou, sometimes known as Carlton Lagoon, not exceeding a distance of 2500 feet from the thread of said stream and not exceeding a distance of 20 miles in an air line from the ordinary boundaries of said city, either above or below the boundaries of said City, or both. The ordinance sought to bind all

lands so annexed and inhabitants thereof by this provision:

*Section 2*: The following described navigable stream and lands lying on both sides thereof be and the same are hereby annexed to the City of Nassau Bay, Texas, and the boundary limits of the City of Nassau Bay be, and the same are hereby extended to include the following described navigable stream and lands lying on both sides thereof, within the City Limits of the City of Nassau Bay, and the same shall hereafter be included within the territorial limits of said City, and the inhabitants thereof shall hereafter be entitled to all the rights and privileges of other citizens of the City of Nassau Bay, and they shall be bound by the acts, ordinances, resolutions and regulations of said City to the full extent permitted by law, including but not limited to Articles 1183 to 1187 V.A.C.S.

Attached to the ordinance is a metes and bounds description of the land annexed which included the major portion of Dr. Winograd's 65 acre tract.

There is no contention by either party that the statutes or ordinance in question are unconstitutional or irregular in any manner.

■ Nassau Bay, by point of error one, complains that the trial court erred in sustaining Dr. Winograd's motion for summary judgment for the reason that it had no jurisdiction. It is Nassau Bay's contention that jurisdiction to determine the validity of penal statutes and ordinances where irreparable injury to vested property rights is not involved, is vested exclusively in the criminal courts, and the legislature did not intend to enact a Declaratory Judgment Act, Article 2524–1, V.A.C.S., in conflict with such constitutional interpretations. Article 2524–1, V.A.C.S., provides:

Section 1. Courts of record within their respective jurisdictions shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed . . .

Section 2. Any person interested . . or whose rights, status, or other legal relations are affected by a Statute, municipal ordinance, contract, or franchise, may have determined any question of construction or validity arising under the instrument, Statute, ordinance, contract, or franchise and obtain a declaration of rights, status or other legal relations thereunder.

Section 12. This Act is declared to be remedial; its purpose is to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations; and is to be liberally construed and administered.

Texas courts have continually held that where a "justiciable controversy" is present, the district court may adjudicate the rights of the parties. *Clark v. City of Dallas*, 228 S.W.2d 946 (Tex.Civ.App.—Waco 1950, no writ); *City of Wichita Falls v. Evans*, 410 S.W.2d 311 (Tex.Civ.App.—Fort Worth 1966, no writ). The courts have also allowed declaratory judgments to determine the construction of statutes and ordinances. *Couch v. City of Fort Worth*, 287 S.W.2d 255 (Tex.Civ.App.—Fort Worth 1956, no writ); *Humble Oil & Refining Co. v. Daniel*, 259 S.W.2d 580 (Tex.Civ.App.—Beaumont 1953, writ ref'd n. r. e.) cert. den. 347 U.S. 936, 74 S.Ct. 631, 98 L.Ed. 1086 (1954). In the case at bar there is a present controversy and Dr. Winograd does have the right to "relief from uncertainty and insecurity". Nassau Bay's first point of error is overruled.

By its second point of error Nassau Bay contends that the trial court erred in sustaining Dr. Winograd's motion for summary judgment and declaring that Articles 1183–1187, V.A.C.S., do not authorize Nassau Bay, pursuant to its annexation ordinance 77–194, to exercise general regulatory control over Dr. Winograd's tract of land and specifically do not authorize Nassau Bay to require Dr. Winograd to comply with its zoning laws, building codes, subdivision rules or ordinances, safety regulations and swimming pool regulations, and Nassau Bay is not entitled, pursuant to Articles 1183–1187, V.A.C.S., to require compliance with these ordinances, codes or regulations. This point of error involves the judicial interpretation and construction of the statutes and

ordinance set out above. Do these articles limit Nassau Bay's annexation power to navigation and wharfage purposes only, or once the land is annexed, can Nassau Bay exercise general regulatory powers over the subject land?

We have examined the few cases in Texas that have had the occasion to render decisions involving Articles 1183–1187. While the cases of *City of Orange v. Rector*, 205 S.W. 503 (Tex.Civ.App.—Beaumont 1918, no writ); *Tod v. City of Houston*, 276 S.W. 419 (Comm.App.—1925, judgment adopted); *City of Galena Park v. City of Houston*, 133 S.W.2d 162 (Tex.Civ.App.—Galveston 1939, writ ref'd); *City of Houston v. Houston Endowment, Inc.*, 428 S.W.2d 706 (Tex.Civ.App.—Houston [1st Dist.] 1968, motion denied 438 S.W.2d 935, writ ref'd n. r. e.); *City of Pasadena v. State of Texas Ex. Rel. City of Houston*, 442 S.W.2d 325 (Tex.1969) and *Houston Endowment, Inc. v. City of Houston*, 468 S.W.2d 540 (Tex.Civ.App.—Houston [14th Dist.] 1971, writ ref'd n. r. e.), all discuss Articles 1183–1187 and the annexation of land pursuant thereto, each case describes and recognized them as limited or special purpose articles enacted to deal with navigation and wharfage. None of these cases is definitive of the rights of the parties herein, since they do not discuss the powers, control, and authority a city derives from annexation under the subject articles. Therefore, the answer to the question before this court must be found by looking to the legislative intent revealed by these articles and the application of established rules of statutory construction.

■ Where the legislature has not defined a term employed in a statute such words are ordinarily given their plain meaning. *Clements v. City of Corpus Christi*, 471 S.W.2d 83 (Tex.Civ.App.—Corpus Christi 1971, writ ref'd n. r. e.); *Brantley v. City of Dallas*, 545 S.W.2d 284 (Tex.Civ. App.—Amarillo 1976, writ ref'd n. r. e.).

■ To determine what the legislative intent is in a given article or group of articles, we must look to the articles themselves. It is the intent of the legislature

that must guide the court when it construes a statute. Our Texas Supreme Court stated the rule thusly in *Gilmore v. Waples*, 108 Tex. 167, 188 S.W. 1037, 1038–9 (1916):

> The intention of a law is the essence of the law, and from this it follows that the primary rule of construction is to ascertain and give effect to that intention.

Dr. Winograd has cited several authorities supporting this rule of statutory construction. The intention of the legislature in enacting a statute must be determined from the language of the statute as therein set out. Courts must not look elsewhere than to the language of the statute to ascertain its intent. *Second Injury Fund v. Keaton*, 162 Tex. 250, 345 S.W.2d 711, 714 (1961); *Wintermann v. McDonald*, 129 Tex. 275, 102 S.W.2d 167 (1937); *Railroad Commission of Texas v. Miller*, 434 S.W.2d 670, 672 (Tex.1968) quoting *Simmons v. Arnim*, 110 Tex. 309, 220 S.W. 66, 70 (1920). As stated in *Sabine Pilots Association, et al. v. Lykes Brothers Steamship, Inc., et al.*, 346 S.W.2d 166, 169 (Tex.Civ.App.—Austin 1961, no writ):

> There is nothing indefinite or misleading in these provisions, and the remaining language of the statutes does not confuse this meaning. In this situation there is no occasion to look elsewhere than to the words of the statute to determine its meaning and the words of the statute is the best evidence of the legislative intent.

■ Articles 1183 through 1187 are models of simplicity in revealing the legislative intent. That intent is to allow cities on navigable streams to extend their city limits within certain boundaries for the limited purposes of aiding navigation and wharves.

We have carefully considered the argument and the cases cited by Nassau Bay to the effect that the articles under consideration should be given a liberal, rather than strict construction so as to reach the true objective of enactment and thereby give effect to the legislative intent. This court cannot give a liberal construction where the law is expressed in plain and unambiguous language. To construe Articles 1183

through 1187 in such a manner as would allow Nassau Bay to exercise general regulatory control over lands annexed thereunder would clearly be a judicial extension of the articles beyond the expressed legislative intent. *Goldman v. Torres*, 161 Tex. 437, 341 S.W.2d 154, 158 (1960); *Second Injury Fund v. Keaton*, supra. We overrule Nassau Bay's second point of error.

The judgment of the trial court is affirmed.