Mr. Andrew Sansom Executive Director Texas Parks and Wildlife Department 4200 Smith School Road Austin, Texas 78744
Re: Whether licensed commercial shrimpers must hold commercial finfish fisherman's licenses in order to sell finfish (RQ-1852)
Dear Mr. Sansom:
Your predecessor requested the opinion of this office on an issue concerning the authority of commercial shrimpers to sell finfish[1]
captured in the course of harvesting shrimp from the waters of this state. You ask whether the captain and each paid member of the crew of a boat licensed as a commercial shrimp boat are required to hold both a general commercial fisherman's license and a commercial finfish fisherman's license in order to sell finfish species that are otherwise lawful to sell. The staff of the Parks and Wildlife Department has answered the question in the affirmative.
It is well established that the construction of a statute by the agency charged with its administration is entitled to great weight. Ex parte Roloff, 510 S.W.2d 913 (Tex. 1974). This is especially true where the administrative construction is contemporaneous, or nearly so, with the statute itself. Burroughs v. Lyles, 181 S.W.2d 570 (Tex. 1944). The courts will not, however, abide by an administrative agency's interpretation that is contrary to the clear meaning of an unambiguous statute. Texas Health Facilities Comm'n v. El Paso Medical, 573 S.W.2d 291
(Tex.Civ.App.-Tyler 1978, writ ref'd n.r.e.); 2 Tex.Jur.3d, Administrative Law § 7.
The captain and each paid member of the crew of a boat licensed as commercial shrimp boat under chapter 77 of the Parks and Wildlife Code must obtain a general commercial fisherman's license. Parks Wild. Code § 77.040(b). A commercial fisherman is a person who catches edible aquatic products except oysters from the water of this state for pay or for the purpose of sale, barter, or exchange, or any other commercial purpose. Id. § 47.001(1). The general commercial fisherman's license authorizes the licensee to engage in business as a commercial fisherman. See id. § 47.002(a).
 In contrast, section 47.003(a) of the code provides, "No person may engage in business as a commercial finfish fisherman unless he has obtained a commercial finfish fisherman's license." A commercial finfish fisherman is "a person who catches only finfish from the tidal waters[2] of this state for pay or for the purpose of sale, barter, or exchange." Id. § 47.001(2) (emphasis and footnote added).
The department's position on this issue is based on its understanding of the nature and purpose of the commercial finfish fisherman's license. The license is thought to constitute a specialized and restricted entitlement to capture finfish species for commercial purposes. The restriction, we are told, was meant to protect a segment of the commercial fishing industry while at the same time promoting conservation of finfish species. In support of these claims, our attention is directed to public testimony offered in support of Senate Bill 302 of the 66th Legislative Session in 1979.
Senate Bill 302 would have added a new class of commercial fishing license — the "tidal water commercial finfish fisherman's license" — to the then existing tidal water commercial fisherman's license and nontidal water commercial fisherman's license. Bill File, S.B. 302, 66th Leg. (1979) (introduced version). It would also have changed the definition of "tidal water commercial fisherman" to mean, in relevant part, "a person who catches fish, other than finfish." The term "finfish" was limited in the bill to eight particular species of fish. The bill would have carved a special niche for holders of commercial finfish fisherman's licenses, in essence granting them the exclusive right to exploit the designated finfish species for commercial purposes. See Public Hearing on S.B. 302 Before the Senate Comm. on Nat.Res., 66th Leg. (Feb. 7, 1979) (testimony of Senator Babe Schwartz) (tape available from Senate Staff Services).
The bill history prepared by the Legislative Reference Library shows that Senate Bill 302 was never reported out of the Senate Committee on Natural Resources. The failure to report a bill from committee or inaction by the legislature on a particular bill does not conclusively establish legislative intent as to the subject matter of the bill. El Chico Corp. v. Poole,732 S.W.2d 306, 314-15 (Tex. 1987). This rule, strictly speaking, means that the failure of the legislature to act on Senate Bill 302 is not indicative of its intent to reject the principles embodied in the bill. Such intent, however, is clearly evident from a comparison of the provisions of the bill with the sections of the Parks and Wildlife Code that occupy their place.
The plain language of the Parks and Wildlife Code does not support the dichotomy set out in Senate Bill 302. Because the captain and crew of a commercial shrimp boat are entitled by their licenses to engage in business as commercial fishermen, they are by definition not prohibited from catching, in addition to shrimp, edible aquatic products other than oysters. The definitions of "commercial fisherman" and "commercial finfish fisherman" now in place were adopted during the same legislative session at which Senate Bill 302 was offered. Acts 1979, 66th Leg., ch. 260, at 550; Acts 1979, 66th Leg., ch. 623, at 1398. These definitions clearly indicate that the legislature intended the latter occupation to constitute a subset of the former, at least where edible species of finfish are concerned. Neither the definitions nor the provisions governing the issuance of the two licenses inform those persons who must determine the effect of the statutes on their occupations of the dichotomy urged by the department.
The best indicator of legislative intent is the language of the enacted law. See McGuire v. City of Dallas, 170 S.W.2d 722
(Tex.Comm'n App. 1943, opinion adopted); City of Nassau Bay v. Winograd, 582 S.W.2d 505, 508 (Tex.Civ.App.-Houston [1st Dist.] 1979, writ ref'd n.r.e.). The relevant provisions of the Parks and Wildlife Code may not describe the activities in which holders of general commercial fisherman's licenses may engage in the way the department would prefer, but we do not believe they are indefinite or misleading. Accordingly, we conclude that the captain and paid members of the crew of a boat licensed as a commercial shrimp boat are not required to obtain commercial finfish fisherman's licenses in addition to the general commercial fisherman's license required by section 77.040 of the Parks and Wildlife Code in order to sell finfish species that otherwise are lawful to sell.[3]
 SUMMARY
The captain and paid members of the crew of a boat licensed as a commercial shrimp boat are not required to obtain commercial finfish fisherman's licenses in addition to the general commercial fisherman's license required by section 77.040 of the Parks and Wildlife Code in order to sell finfish species that otherwise are lawful to sell.
Very truly yours,
 Jim Mattox Attorney General of Texas
 Mary Keller First Assistant Attorney General
 Lou McCreary Executive Assistant Attorney General
 Judge Zollie Steakley Special Assistant Attorney General
 Renea Hicks Special Assistant Attorney General
 Rick Gilpin Chairman Opinion Committee
 Prepared by Steve Aragon Assistant Attorney General
[1] "Finfish" are "those living natural resources having either cartilaginous or bony skeletons (Chondrichthyes and Osteichthyes)." Parks Wild. Code § 47.001(14).
[2] "`Tidal water' means all the salt water of this state, including that portion of the state's territorial water in the Gulf of Mexico within three marine leagues from shore." Id. § 47.001(7).
[3] It might be argued that our conclusion here renders the commercial finfish fisherman's license wholly redundant, since the only license any individual would need is the general commercial fisherman's license. We acknowledge this prospect, but add that the result is compelled by the plain language of the Parks and Wildlife Code and is beyond our authority to correct.