whisky for his own use or for medicinal purposes. Williams v. State, 139 Tex.Cr. R. 35, 138 S.W.2d 807; Nave v. State, 146 Tex.Cr.R. 372, 175 S.W.2d 419, and cases there cited.

For the error pointed out the judgment is reversed and the cause is remanded.

Opinion approved by the Court.

**COLUMBIA–SOUTHERN CHEMICAL CORPORATION, Appellant,**

**v.**

**CORPUS CHRISTI SHELL COMPANY et al., Appellees.**

No. 13032.

Court of Civil Appeals of Texas.

San Antonio.

Nov. 21, 1956.

Rehearing Denied Dec. 31, 1956.

**192**

Hayden W. Head, Corpus Christi, Graves Dougherty & Greenhill, Austin, for appellant.

Dan Moody, Dan Moody, Jr., Austin, Pichinson Utter & Chase, Kleberg, Mobley, Lockett & Weil, Corpus Christi, for appellees.

W. O. MURRAY, Chief Justice.

This is a suit by Columbia-Southern Chemical Corporation to obtain a judgment declaring the validity of, and the rights of plaintiff under, a contract for the sale of mudshell, entered into between plaintiff's predecessor in title, Southern Minerals Corporation (plaintiff's wholly owned subsidiary), and the Game, Fish & Oyster Commission of Texas (now the Texas Game & Fish Commission) on January 19, 1934. Plaintiff also seeks an injunction to protect its asserted claims.

The three defendants, Corpus Christi Shell Company, Heldenfels Brothers, and General Dredging Corporation, claim rights under permits that have been issued to them respectively by the Commission in March and April, 1955, that are in conflict with the rights claimed by plaintiff under its contract of sale of January 19, 1934.

The case was submitted to the court without a jury and judgment rendered that plaintiff's contract was invalid insofar as it attempts to grant a special privilege or exclusive right to plaintiff or its assignors, to dredge for and remove mudshell from Nueces Bay. The court also denied plaintiff's prayer for injunction and decreed that the permits held by defendants, authorizing them to remove mudshell from the area of Nueces Bay, described in the permits, are valid, effective and subsisting permits. Columbia-Southern Chemical Corporation has prosecuted this appeal.

The agreement as to the facts is short and is here set forth:

"II

"(a) On or about January 19, 1934, The Game & Fish Commission of the State of Texas (then the Game, Fish & Oyster Commission, hereinafter referred to as the Commission), with approval of the Governor of the State of Texas, entered into a contract, approved as to form by the Attorney General, with Southern Minerals Corporation, a Delaware corporation having a permit to do business in Texas. A true copy of the contract is annexed to plaintiff's original petition, as Exhibit A.

"(b) Pursuant to the terms of said contract, Southern Minerals Corporation thereafter commenced dredging and removing mudshell from Nueces Bay.

"(c) Thereafter, in June 1935, Southern Minerals Corporation, a wholly owned subsidiary of Southern Alkali Corporation, transferred and assigned said contract and its rights thereunder to Southern Alkali Corporation, a Delaware corporation having a permit to do business in Texas, the name of which corporation has now been changed by charter amendment to Columbia-Southern Chemical Corporation, which continued dredging and removal of mudshell from Nueces Bay.

"(d) All the obligations of Second Party under said contract have been performed, and the total consideration of $100,000 required to be paid by Second Party for the mudshell has been duly paid according to the contract. Of the 2,000,000 tons of shell covered by the contract approximately 60,000 tons have not been dredged or removed by plaintiff, as of the time of filing this stipulation.

"III

"(a) On April 24, 1940, plaintiff, as shown by Exhibit B, attached to the

original petition, released its rights in a large portion of Nueces Bay, therein defined. Thereafter, on June 17, 1954, plaintiff executed and delivered to the Commission a further release of other therein defined portions of Nueces Bay, as shown by Exhibit C attached to the original petition.

"(b) Before March 28, 1955, the plaintiff and its assignor, Southern Minerals Corporation, but no other person, firm or corporation, had exercised the right to dredge and remove mudshell from Nueces Bay, except as to said areas therein so released, under the terms of said contract of January 19, 1934. The exclusive right to dredge for and remove mudshell from said unreleased areas of said bay is a valuable right having economic value to plaintiff, if such right was legally and validly vested in plaintiff pursuant to the terms of said contract.

"(c) Before March 28, 1955, the Commission had not issued, but had refused to grant or issue permits to dredge in any part of the areas described in plaintiff's claimed contract which had not been released by plaintiff. However, on March 28, 1955, April 25, 1955, and April 18, 1955, the respective defendants herein were by the Commission granted permits purporting to authorize them to enter upon and remove shell from Nueces Bay within the area not heretofore released by plaintiff."

Appellant is here asserting that under its contract it has the exclusive right to dredge for mudshell in that part of Nueces Bay which it has not expressly released and that the permits issued to defendants in the same area are void and of no effect.

The decision of this question calls for an interpretation of Arts. 4053 and 4053d of Vernon's Ann.Civ.Stats. The pertinent parts of these two articles are as follows:

"Art. 4053. Permit to use marl, etc.

"Anyone desiring to purchase any of the marl and sand of commercial value and any of the gravel, shells or mudshell included within the provisions of this chapter, or otherwise operate in any of the waters or upon any island, reef, bar, lake, bay, river, creek or bayou included in this chapter, shall first make written application therefor to the Commissioner designating the limits of the territory in which such person desires to operate. If the Commissioner is satisfied that the taking, carrying away or disturbing of the marl, gravel, sand, shells or mudshell in the designated territory would not damage or injuriously affect any oysters, oyster beds, fish inhabiting waters thereof or adjacent thereto and that such operation would not damage or injuriously affect any island, reef, bar, channel, river, creek, or bayou used for frequent or occasional navigation, nor change or otherwise injuriously affect any current that would affect navigation, he may issue a permit to such person after such applicant shall have complied with all requirements prescribed by said Commissioner. The permit shall authorize the applicant to take, carry away or otherwise operate within the limits of such territory as may be designated therein, and for such substance or purpose only as may be named in the permit and upon the terms and conditions of the permit. *No permit shall be assignable,* and a failure or refusal of the holder to comply with the terms and conditions of such permit shall operate as an immediate termination and revocation of all rights conferred therein or claimed thereunder. *No special privilege or exclusive right shall be granted to any person,* association of persons, corporate or otherwise, to take or carry away any of such products from any territory or to otherwise operate in or upon any island, reef, bay, lake,

river, creek, or bayou included in this chapter. Acts 2nd C.S. 1919, p. 216. [Italics ours.]"

"Art. 4053d. Sale of marl, gravel, sand, etc.

"The Game, Fish and Oyster Commissioner by and with the approval of the Governor, may sell the marl, gravel, sand, shell or mudshell included within this Act, upon such terms and conditions as he may deem proper, but for not less than four (4c) cents per ton, and payment therefor shall be made to said Commissioner. * * *"

■■ Appellant· contends that the provisions contained in Art. 4053, to· the effect that a permit to dredge for mudshell, etc., shall not be assignable, and that no special privilege or exclusive right shall be granted to any person, etc., do not apply to sales of mudshell, etc., made under the provisions of Art. 4053d. We do not agree. The two articles must be construed together. Art. 4053 has to do with the issuing of permits to dredge and places certain limitations upon such permits, while Art. 4053d relates to sales of mudshell, etc. There is no provision for the issuance of permits to dredge under this article. That is provided for under Art. 4053.

■ Appellant contends that the members of the Commission and the Attorney General of this State have placed a different construction upon these articles of the statute and that we should be bound by such constructions. If the articles were ambiguous or of doubtful meaning we would be inclined to give great weight to the construction placed upon them by the Attorney General and the officers charged with the duty of administering them, but they are not ambiguous or of doubtful meaning, and therefore should be construed according to their plain provisions.

We do not find that either the Attorney General or the Commission has ever heretofore been called on to pass upon the exact question presented by this appeal, but, be that as it may, the intention of the Legislature can readily be ascertained from the wording of the statutes and that intention is that exclusive permits to dredge cannot be granted by the Commission.

The judgment is affirmed.