AMDEL PIPELINE, INC., Appellant,

v.

The STATE of Texas, acting through its agency, the Texas Parks & Wildlife Department, Appellee.

No. 7753.

Court of Civil Appeals of Texas, Beaumont.

Nov. 26, 1975.

Rehearing Denied Dec. 18, 1975.

M. Harvey Weil, Corpus Christi, John G. Tucker, Beaumont, for appellant.

John L. Hill, Atty. Gen., Robert R. Jespersen, Asst. Atty. Gen., Houston, for appellee.

STEPHENSON, Justice.

Amdel Pipeline, Inc. (Amdel), as plaintiff, filed this declaratory judgment suit, seeking a declaration that it is not required to pay the Texas Parks and Wildlife Department (Department) 25¢ per cubic yard for spoil dredged from the Neches River adjacent to its wharves. The Department filed a cross-action to recover judgment for 111,-022 cubic yards of spoil dredged, in the amount of $28,865.72. Both parties filed motions for summary judgment and stipulated as to the facts. This is an appeal from the judgment rendered for the Department.

A part of the stipulated facts are as follows: Amdel owns a refinery located on the bank of the Neches River. Amdel owns and operates the ship terminal facilities serving the refinery consisting of three wharves. The Neches River, at this point, is a federally authorized navigation project consisting of a dredged channel 40 feet deep and 400 feet wide. Amdel's wharves are adjacent to the channel, but it is necessary to dredge the area around these wharves so they may be used. Maintenance of the channel itself is performed by the United States Army, Corps of Engineers. There is no place in the river for the dredged material to be placed; so the Corps of Engineers has acquired spoil areas in the form of permanent easements along the river. One of these spoil areas is located on Amdel's land. Amdel received a permit from the Corps of Engineers to dredge the area around its wharves conditioned upon obtaining the State of Texas' authorization if required. Amdel applied to the Department for a dredging permit with the spoil to be placed in the spoil area on Amdel's property. The Department held a public hearing upon that application, and issued Amdel a "revenue" permit authorizing the removal of 40,000 cubic feet of material conditioned upon Amdel's payment of 25¢ per cubic yard for material removed. Amdel performed the dredging and removed 111,022 cubic yards of material for which they received a bill at the rate of 25¢ per cubic yard. Amdel refused to pay the bill and filed this suit.

Simply stated, the real controversy between the parties to this suit is whether the State of Texas can make the payment for spoil material removed a condition to granting a permit for dredging regardless of the nature and character of the spoil material. We have come to the conclusion that under the present statutory authority the Department cannot make such a charge. We proceed to review this statutory authority placed in the Department in order to give our reasons for such a conclusion.

First, Tex.Rev.Civ.Stat.Ann. art. 4051 (1966), in effect, has given certain authority, powers, duties, and functions to the Department, over the fresh water rivers of this state, "together with all the marl and sand of commercial value, and all the shells, mudshell or gravel of whatsoever kind that may be . . . upon the bottoms of any . . . rivers . . . within the jurisdiction and territory herein defined . . . . None of the marl, gravel, shells, mudshells or sand included herein shall be purchased, taken away or disturbed, except as provided herein."

Then, Tex.Rev.Civ.Stat.Ann. art. 4052 (1966) states the powers of the commission (now the Department) as follows:

"Powers of Commissioner

"The Commissioner is hereby invested with all the power and authority necessary to carry into effect the provisions of this chapter, and shall have full charge and discretion over all matters pertaining to the sale, the taking, carrying away or disturbing of all marl, sand or gravel of commercial value, and all gravel and shells or mudshell and oyster beds and their protection from free use and unlawful disturbing or appropriation of same, with such exceptions as may be provided herein."

Tex.Rev.Civ.Stat.Ann. art. 4053, § 1 (1966) provides in part for the following:

"Anyone desiring to purchase any of the marl and sand of commercial value and any of the gravel, shells or mudshell . . . or otherwise operate in any . . . river . . . included in this Chapter, shall first make written application . . . . If the . . . Commission finds that the taking, carrying away or disturbing of the marl, gravel, sand, shells or mudshell in the designated territory would not damage or injuriously affect any oysters, oyster beds, fish . . . it may issue a permit."

Tex.Rev.Civ.Stat.Ann. art. 4053d (1966) reads in part as follows:

"The Game, Fish and Oyster Commissioner by and with the approval of the Governor, may sell the marl, gravel, shell or mudshell included within this Act, upon such terms and considerations as he may deem proper, but for not less than four (4¢) cents per ton, and payment therefor shall be made to said Commissioner."

It is also agreed by the parties that this case presents a question for first impression, and requires this Court to construe the above-quoted statutes to the factual situation presented to us. During the oral argument, it was made known to the court that the position taken by the Department in this case was first advanced in 1973, and before that time, revenue permits had been issued only in the event one of the enumerated elements (marl, gravel, sand, shell, or mudshell) was to be removed. We agree that the old policy placed the proper construction on these statutes. We think it is clear that the Legislature intended to vest in the Department the authority to charge for the removal of any gravel, shell, or mudshell, and to charge for the removal of marl and sand if it is of commercial value.

■ One of the most frequently used and approved rules of construction is "expressio unius est exclusio alterius." The Supreme Court of this state used this explanation of that rule in State v. Mauritz-Wells Co., 141 Tex. 634, 175 S.W.2d 238, 241 (1943): "It is a settled rule that the express mention or enumeration of one person, thing, consequence, or class is equivalent to an express exclusion of all others." By expressly naming five specific materials for which the Department may make a charge, it must be presumed that no charge can be made for any other materials.

If the Legislature wishes, it can amend the statutes referred to above, and provide very simply that the Department may make a charge for any material removed from river beds without regard to its commercial value. The Department has stipulated that it was operating on the theory that it had such authority under the present law, and no effort was made, at the public hearing or at the trial court level, to determine the type or kind of spoil dredged.

The undisputed evidence shows the dredging in this case was done for navigation purposes and not for the purchase of any of the enumerated statutory materials. The spoil was pumped upon a permanent easement owned by the Corps of Engineers, and there is no evidence it had any value to Amdel.

■ In order to prevail in the declaratory judgment action, it was Amdel's burden to establish that the material which it pumped from the river was not one of the five substances which entitled the Department to payment, i. e., that the material was not

marl or sand of commercial value or gravel, shells, or mudshell. Similarly, in order to prevail upon its cross action, it was the Department's burden to establish upon the trial the amount of the several enumerated materials removed from the river by Amdel and its standard and established price for such enumerated materials so removed.

Since the cause was not sufficiently developed to enable this court to render a final judgment, the judgment of the trial court is reversed and the cause remanded for a new trial in accordance with the interpretation of the statute rule herein stated.

Reversed and remanded.