AMDEL PIPELINE INC., Petitioner,

v.

The STATE of Texas, Respondent.

No. B–5767.

Supreme Court of Texas.

July 21, 1976.

Rehearing Denied Sept. 29, 1976.

Orgain, Bell & Tucker, John G. Tucker, Beaumont, Kleberg, Mobley, Lockett & Weil, M. Harvey Weil, Corpus Christi, for petitioner.

John L. Hill, Atty. Gen., Austin, Robert R. Jespersen, Asst. Atty. Gen., Houston, for respondent.

REAVLEY, Justice.

This case presents a question of the statutory authority of the State Parks and Wildlife Department to require those persons dredging materials from state owned tidal lands to obtain permits and to pay for spoil removed by the dredging.

Amdel Pipeline Inc. (Amdel), acting pursuant to a permit from the United States Army Corps of Engineers, removed materials which had silted into and filled the bottom of the approaches to its loading docks on the Neches River; the dredged material was deposited upon land owned by Amdel but subject to a perpetual spoil disposal easement of the United States. Amdel contends that existing statutes do not require it to obtain a permit from the State Parks and Wildlife Department (Department) to perform this work under these circumstances. Amdel further contends that it owes nothing to the Department or to the State for the spoil removed from the river bottom. The Department contends that Amdel may remove no material from these submerged lands except by approval of the Department and, in this case, by the payment of 25¢ per cubic yard for the materials removed. The trial court sustained the position of the Department and rendered judgment that the State recover $28,-865.72 from Amdel. The Court of Civil Appeals held that the disposition of the cause depends upon the amount of certain elements in the dredged materials and, because that proof is absent from the present record, the case was remanded to the trial court for further development. 530 S.W.2d 647. We sustain Amdel's position and render judgment in its favor.

Amdel owns and operates oil storage and ship terminal facilities on the Neches River near Port Neches and adjacent to the refinery of American Petrofina Company. The ship terminal facilities consist of three wharves or docks, one of which can accommodate large tankers. Tankers reach these docks through the Neches River Channel.

The Neches River Channel is a federal navigation project, approximately 40 feet deep and 400 feet wide, providing deep draft ship navigation from the Gulf of Mexico as far inland as the Port of Beaumont. Maintenance of this channel and project is

the responsibility of the United States Army Corps of Engineers. In order to provide the local contribution and assure maintenance of the federal project, the Beaumont Navigation District has obligated itself to the United States to provide all easements for spoil disposal, to provide and maintain levees on all spoil disposal areas, and to provide "depths in berthing areas and local access channels serving the terminals commensurate with depths in related project areas."

Amdel's ship terminal facilities are located adjacent to the Neches River Channel at a sufficient distance to insure that ships moored to its docks do not obstruct navigation in the channel. The use of these dock facilities requires deep water between the channel and the dock. When Amdel acquired these facilities on July 1, 1973, it discovered that the water approach areas had become filled to an extent that blocked the movement of deep draft vessels. The Corps of Engineers was then engaged in a maintenance program to clear the Neches River Channel, which afforded Amdel the opportunity to engage the services of the dredging contractor when the operations reached the site of Amdel's facilities.

When the Neches River Channel is dredged by the Corps of Engineers, the material dredged from the river bottom is placed on land near the river. There is no location in the river suitable for this material to be placed. The United States has been given permanent easement rights in areas along the river for spoil disposal in this manner. One of these spoil disposal areas of approximately 435 acres is located on a tract of land owned by Amdel and adjacent to its ship facilities. Under its easement the United States has the perpetual right to deposit spoil and other excavated matter from the channel. This spoil disposal area has been used for nothing except disposal of dredged material since December 23, 1935. Material dredged from the river bottom between Amdel's docks and the Neches River Channel has on all occasions been placed in the same disposal area used by the Corps of Engineers.

In 1973 Amdel applied for and received a dredging permit from the Corps of Engineers to conduct the maintenance dredging of the area adjacent to its dock facilities. The dredging has been completed under the permit which was conditioned upon Amdel obtaining such permits as might be required under state law. The Texas Parks and Wildlife Department required Amdel to obtain a permit conditioned upon Amdel's payment of 25¢ per cubic yard for the spoil material removed from the river bottom. Amdel objected to the requirement that payment be made and insisted that the spoil material was worthless to Amdel and was no more than a nuisance to be removed.

Amdel desires to do additional dredging in the same area to open the sides of approach from the channel and permit ships to be moved toward its docks at an oblique angle rather than being brought abreast of the docks and shoved in at a 90 degree angle. The parties have agreed that the decision as to the authorization and consequence of the completed dredging will govern the proposed enlargement.

When the results of the 1973 dredging showed that 111,022 cubic yards of material had been dredged and placed on the spoil disposal easement, the Department billed Amdel for $28,865.72 (25¢ per cubic yard plus sales tax). Amdel refused to pay and then filed this suit seeking a declaratory judgment that it is not obligated to pay the Department for the spoil under these circumstances. The State answered and filed a counterclaim for the above amount. The facts were stipulated, and both parties moved for summary judgment. The trial court granted the motion of the State and rendered judgment that Amdel pay to the Department the stated amount.

The Court of Civil Appeals held that Amdel could be charged for the removal of any gravel, shell or mudshell, as well as for any marl or sand of commercial value. Since the record does not show the amount of the several enumerated materials within the conglomerate spoil dredged from the river by Amdel, the cause was remanded for a new trial in order that this proof could be

made. We respectfully disagree. The rules of the Department for the issuance of marl, sand and gravel permits define "fill materials" as "a conglomerate mixture of sand, shell, gravel and marl of such consistency and quality as to make it impractical to separate into any one or more of the above-named materials and which has a primary use and value as a fill material to increase the level of land area." Amdel has made no objection and has raised no question about the particular contents of the dredged material. Amdel insists that it owes nothing—regardless of how many yards of marl or sand or mudshell might be in the spoil. We see no reason why the Department cannot sell the conglomerate mixture without separating the various materials. The difficulty

we find with the Department's position is more fundamental: it has no statutory authority to require Amdel to obtain a permit for the taking of these materials from the bottom of the Neches River under these circumstances.

The relevant statutes are now to be found in Chapter 86 of the Parks and Wildlife Code (Acts 1975, 64th Leg., Ch. 545, p. 1405). At the time this controversy and litigation were initiated, the statutes were codified as Vernon's Ann.Civ.St. arts. 4051, 4052, 4053, 4053d, and art. 976 of the Penal Code. For purposes of our inquiry the legislative direction and authorization has not changed since 1911. The relevant portions of that 1911 Act are set forth in the margin.[1] Various amendments were made sub-

1. The caption and named sections of Acts 1911, 32nd Leg., Ch. 68, p. 118, are as follows:

An Act to provide for the protection of the fish and oysters within tide water limits along the Gulf coast of this State from the most interior point of tidewater seaward co-extensive with the jurisdiction of the State and the fish in such fresh water lakes inland as may be owned by the State; and to provide for the sale and protection of all marl and sand of commercial value and all shells or mudshell that may be in or upon the bottoms of any lake, bay and shallow water, and in or upon all islands, reefs and bars that may be within the limits herein defined; and the placing of said islands, lakes and bays, and the shells, or mudshell, sand and marl that may be in or upon the said bottoms or in or upon the said islands, lakes, bays, reefs and bars under the jurisdiction and control of the Game, Fish and Oyster Commissioner for the purpose of selling and protecting the said shells, or mudshell, marl and sand; and providing that the proceeds arising from the sale of said shells, or mudshell, marl and sand, shall be credited to the Fish and Oyster Fund and be expended in the execution of this Act and in establishing fish hatcheries on the coast or elsewhere and in locating oyster beds, and reserving fresh water lakes from sale; and providing penalties for the violation of this Act, and appropriating to certain funds the proceeds from sale and fines arising under this Act, and declaring an emergency.

*Be it enacted by the Legislature of the State of Texas:*

SECTION 1. All of the islands, reefs, bars, lakes and bays within tidewater limits from the most interior point seaward coextensive

with the jurisdiction of this State and such of the fresh water lakes within the interior of this State as may not be embraced in any survey of private land, together with all the marl and sand of commercial value, and all the shells or mudshell, of whatsoever kind that may be in or upon any island, reef or bar, and in or upon the bottoms of any lake, bay or shallow water, and also all fishing waters, fish hatcheries and oyster beds, within the jurisdiction and territory herein defined, are included within the provisions of this Act, and all such islands, reefs, bars, lakes, bays, shallow waters, and the marl, sand, shells, or mudshell and oyster beds and fishing waters and fish hatcheries, located as herein defined, are, for the purpose of this Act, hereby placed under the management, control and protection of the Game, Fish and Oyster Commissioner.

\*   \*   \*   \*   \*   \*

SEC. 3. The Game, Fish and Oyster Commissioner is hereby invested with all the power and authority necessary to carry into effect the provisions of this Act, and shall have full charge and discretion over all matters pertaining to the sale, the taking, carrying away or disturbing of all marl or sand of commercial value, and all shells or mudshell and oyster beds and fishing waters, and their protection from free use and unawful (sic) disturbing or appropriation of same, with such exceptions and under such restrictions and limitations as may be provided herein.

SEC. 4. None of the marl or sand or shells or mudshell included within the preceding sections of this Act shall be purchased, taken, carried away or disturbed except as provided in this Act, nor shall any

sequently: Acts 1911, 32nd Leg., 1st C.S., Ch. 7, p. 78; Acts 1919, 36th Leg., 2nd C.S., Ch. 74, p. 215; Acts 1925, 39th Leg., Ch. 183, p. 452; Acts 1963, 58th Leg., Ch. 248, p. 674. Over these years the previous authority of the Game, Fish and Oyster Commissioner was given to the Game, Fish and Oyster Commission in 1929, then to the Game and Fish Commission in 1951, and then to the Parks and Wildlife Department under the policy direction of the Parks and Wildlife Commission in 1963.

■ The statute has provided, as in Sec. 9 of the 1911 Act, that anyone who shall

*"take or carry away"* marl or sand, etc., or who "shall disturb" the same shall first obtain a written permit—unless *the taking or disturbing* is for a purpose "necessary or incident to navigation or dredging under state or federal authority . . . ." Sec. 86.002 of the Texas Parks and Wildlife Code now provides that *no person may disturb or take* marl or sand, etc., "for any purpose other than that necessary or incidental to navigation or dredging under state or federal authority . . . " without first having acquired a permit. We must construe the sections of this legislation together and attempt to give full effect to all of its

oyster beds, fishing waters or fish hatcheries within the territory included in this Act be disturbed except as herein provided.

SEC. 5. Any one desiring to purchase any of the marl and sand of commercial value and any of the shells or mudshell included within the provisions of this Act, or otherwise operate in any of the waters or upon any island, reef, bar, lake or bay included in this Act, shall first make written application therefor to the Game, Fish and Oyster Commissioner, designating the limits of the territory in which such person desires to operate. If the Game, Fish and Oyster Commissioner is satisfied the taking, carrying away or disturbing of the marl, sand or shells or mudshell in the designated territory would not damage or injuriously affect any oysters, oyster bed, fish inhabiting the waters thereof or adjacent thereto, and that such operation would not damage or injuriously affect any island, reef, bar, channel used for frequent or occasional navigation nor change or otherwise injuriously affect any current that would affect navigation, he may issue a permit to such person after such applicant shall have complied with all regulations and requirements prescribed by said Commissioner. The permit shall authorize the applicant to take, carry away, or otherwise operate within the limits of such territory as may be designated therein, and for such substance or purposes only as may be named in the permit and upon the terms and conditions therein. No permit shall be assignable, and a failure or refusal of the holder to comply with the terms and conditions of the permit shall operate as an immediate termination and revocation of all rights conferred therein or claimed thereunder. No special privilege or exclusive right shall be granted to any person, association of persons, corporate or otherwise, to take or carry away any marl, sand or shell or mudshell from any territory nor to otherwise operate in or upon any island, reef, bar, lake, or bay included in this Act.

SEC. 6. The Game, Fish and Oyster Commissioner, by and with the approval of the Governor, may sell the marl, sand and shells or mudshell included within this Act upon such terms and conditions as he may deem proper, but for not less than ten cents per cubic yard, and payment therefor shall be made to said Commissioner. The proceeds arising from such sale shall be transmitted to the State Treasurer and be credited to the fish and oyster fund, and may be expended by the said Commissioner upon itemized accounts sworn to by those performing the service or furnishing the material and approved by said Commissioner. The said accounts shall be filed with the Comptroller of Public Accounts, and he shall draw a warrant therefor upon the State Treasurer.

\* \* \* \* \* \*

SEC. 9. If any person, association of persons, corporate or otherwise, shall, for himself or itself, or for or on behalf of or under the direction of another person, association of persons, corporate or otherwise, take or carry away any of the marl, sand or shells or mudshell included in this Act, or shall disturb any of said marl, sand shells or mudshell or oyster beds or fishing waters, or shall fish in any fresh water lake or shall operate in or upon any of said places for any purpose other than that necessary or incident to navigation or dredging under State or Federal authority, without having first obtained a written permit from the Game, Fish and Oyster Commissioner for the territory in which such operation is carried on, such person, association of persons, corporate or otherwise, shall be deemed guilty of a misdemeanor, and upon conviction shall be fined in a sum of money not less than ten dollars nor more than two hundred dollars, and one-half of the proceeds arising from such fines shall be appropriated to the road and bridge fund of the county in which the conviction is had and one-half shall be appropriated to the fish and oyster fund.

terms. *Simmons v. Arnim,* 110 Tex. 309, 220 S.W. 66 (1920); *Indemnity Ins. Co. of North America v. South Texas Lumber Co.,* 29 S.W.2d 1009 (Tex.Comm.App.1930); *Columbia-Southern Chemical Corp. v. Corpus Christi Shell Co.,* 297 S.W.2d 191 (Tex.Civ. App.1956, writ ref'd n. r. e.).

We do not construe Sec. 9 of the original Act, where the exception for navigation or dredging appears, as being directed solely at the requirement of a permit to operate in these areas. The exception to the permit requirement expressly applies even though materials are removed by the operator. Nor do we construe the section to have the isolated effect of telling us whom shall suffer penal sanctions. The caption of the 1911 Act refers to "penalties for the violation of this Act"—indicating that there is no violation of any part of the Act where one, who removes marl and sand, does so in the course of operations that are necessary or incident to navigation or dredging under state or federal authority. Other sections of the 1911 Act make reference to limitations on the permit requirement. For example, Sec. 3 gives the Commissioner full charge pertaining to the sale or taking or disturbing of marl or sand, etc., "with such exceptions and under such restrictions and limitations as may be provided herein."

We note that Attorney General's Opinion WW–150, issued July 3, 1957, advised: "A permit from the Game and Fish Commission to dredge shell on lands heretofore patented to the Nueces County Navigation District is not a prerequisite to the removal of shell commercially from said lands so long as such removal is incidental to authorized navigational purposes." The Commission was further advised that it had authority to issue permits for commercial shell dredging on lands patented to the Navigation District so long as the dredging did not interfere with the paramount use of the land for navigation purposes. On June 5, 1967 the Attorney General issued Opinion M–84 which advised the Parks and Wildlife Department that it had authority and duty to manage these elements "except the marl, sand, shells, mudshell, gravel, fish hatcheries and oyster beds that are disturbed for an authorized navigational purpose, and such purpose is incidental to and reasonably necessary in carrying out such navigation, or being disturbed by a lessee of the School Land Board in carrying out the purpose of the lease (whether for oil or gas production or other commercial or industrial use) and which disturbance of the marl, etc., is incidental to such purposes and reasonably necessary in carrying out such purposes."

It is agreed in this case that Amdel's operations were both necessary and incidental to navigation and were done under federal authority. The Department was entitled to be assured that Amdel's operations met these statutory requirements. Having been given that assurance, the Department could impose no condition on its permit that was inconsistent with the statutory provision. It follows that the State has no claim against Amdel for the spoil material which has been dredged from the Neches River. Nothing that is said herein is intended to suggest any restriction upon the Department's authority to protect oyster beds and fishing areas, as well as state owned property, from unnecessary harm.

The judgment of the Court of Civil Appeals is reversed. Judgment is here rendered declaring that Amdel Pipeline Inc. is not obligated to pay the Texas Parks and Wildlife Department for the spoil which was dredged from its slip and placed within the boundaries of Permanent Spoil Disposal Easement No. 2. Judgment is further rendered that the State of Texas recover nothing upon its counterclaim against Amdel Pipeline Inc.