

# The Attorney General of Texas

September 10, 1981

**MARK WHITE**
Attorney General

Supreme Court Building
P.O. Box 12548
Austin, TX. 78711
512/475-2501

1607 Main St., Suite 1400
Dallas, TX. 75201
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905
915/533-3484

1220 Dallas Ave., Suite 202
Houston, TX. 77002
713/650-0666

806 Broadway, Suite 312
Lubbock, TX. 79401
806/747-5238

4309 N. Tenth, Suite B
McAllen, TX. 78501
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

Honorable Charles D. Travis
Executive Director
Texas Parks & Wildlife Department
4200 Smith School Road
Austin, Texas 78744

Opinion No. MW-367

Re: Authority of Department
of Parks & Wildlife to refund
fees paid by Jacintoport for
dredged material taken from
Carpenter's Bayou

Dear Mr. Travis:

Your request for our opinion concerns a demand made by the Jacintoport Corporation for a refund of the $25,000 fee it paid to the Parks and Wildlife Department for the right to perform certain maintenance dredging. We understand the facts are as follows:

In January, 1980, Jacintoport applied to the U.S. Army Corps of Engineers for a permit to perform maintenance dredging of a barge canal in the Carpenter's Bayou area. The Corps of Engineers declined to issue a permit, however, because of objections raised by the Parks and Wildlife Department. The department contended that because the state owned the materials to be dredged, it was authorized to charge Jacintoport a fee for their removal. Jacintoport paid a $25,000 fee and obtained its permit.

Jacintoport has since demanded a refund of this fee. Among other things, it claims that it performed no dredging on state-owned property, and that the department therefore lacked authority to charge this fee. At the department's request, the General Land Office researched the question of ownership of the canal, and advised the commissioner that the state has never claimed Carpenter's Bayou. We understand that you do not dispute this conclusion. Rather, your question is whether, acting in reliance on this information, the department may lawfully refund the $25,000 fee to Jacintoport.

Section 86.002 of the Parks and Wildlife Code provides, in paragraph (a), that:

> No person may disturb or take marl, sand, gravel, shell or mudshell under the management and protection of the commission...for any purpose other than that necessary or incidental to navigation or dredging under state or federal

authority without first having acquired from the commission a permit authorizing the activity.

Marl and sand of commercial value and gravel, shell, and mudshell are under the commission's management and protection if located:

within the tidewater limits of the state, and on islands within those limits, and within the freshwater areas of the state not embraced by a survey of private land, and on islands within those areas.

Parks & Wild. Code §86.001. Section 86.012 of the code authorizes the commission to sell these substances, and section 86.016 provides that the proceeds from their sale shall be deposited in the Special Game and Fish Fund (renamed Game, Fish, and Water Safety Fund; see Acts 1979, 66th Leg., ch. 260 at 546).

Section 11.031 et seq. of the code describes various funds in the state treasury, including the Game, Fish, and Water Safety Fund referred to above. Parks & Wild. Code §§11.031-11.034. Section 11.040 provides as follows:

(a) Any funds deposited in the state treasury by the department by mistake of fact or mistake of law shall be refunded by warrant issued against the fund in the state treasury into which the money was deposited. Refunds necessary to make the proper correction shall be appropriated by the general appropriations act.

(b) The comptroller may require written evidence from the director of the department to indicate the reason for the mistake of fact or law before issuing the warrant authorized in Subsection (a) of this section.

(c) This section does not apply to any funds that have been deposited under a written contract or to any funds on deposit as of June 8, 1971, which are the subject of litigation in any of the courts of this state or the United States.

These provisions establish that if the land is not under the commission's management and protection, the commission lacked authority to charge Jacintoport a $25,000 fee for dredging materials therein. Section 11.040 authorizes the refund of funds deposited in the treasury under a "mistake of fact or mistake of law." In our opinion, a fee for dredging materials which the commission charged under an erroneous assumption that it had a duty to manage and protect them would be a deposit in the treasury under a "mistake of fact." See Lusk v. Parmer, 114 S.W.2d 677 (Tex. Civ. App. - Amarillo 1938,

writ dism'd) (discussion of meaning of "mistake of fact").   Thus, the remaining question is whether the General Land Office's determination that the state has never claimed Carpenter's Bayou is sufficient authority for the commission properly to conclude that the dredged materials were not under its management and protection and, therefore, that a "mistake of fact" occurred.

Sections 31.001 et seq. of the Natural Resources Code govern the General Land Office.   Section 31.011 provides that the General Land Office "shall register all land titles emanating from the state if not prohibited by the constitution." See also Tex. Const. art. XIV, §1. Section 31.051 provides that the duties of the commissioner of that office consist, among other things, of executing and performing:

> (2) ...all acts and other things relating to
> public land of the state or rights of individuals
> in public land which is required by law....

Ashby v. Ringstaff, 464 S.W.2d 891 (Tex. Civ. App. – Austin 1971, writ ref'd n.r.e.), holds that the land commissioner has no power to adjudicate between rival claimants whose titles to land have become fixed.   See also Atlantic Refining Co. v. Noel, 443 S.W.2d 35 (Tex. 1968) (commissioner has no power to divest or enlarge title to land by ordering and accepting resurvey).   In this instance, however, the General Land Office is not attempting to resolve any dispute between rival claimants to Carpenter's Bayou, nor is it attempting to divest or enlarge any title to land.   On the contrary, we understand that it has merely concluded that its records indicate the state has never claimed Carpenter's Bayou.   Since all land titles "emanating from the state" must be registered with the Land Office, we believe that office certainly has authority to examine those titles, as well as other maps and records in its files, and make an authoritative determination as to whether the state has ever claimed certain property.   See Caples v. Cole, 102 S.W.2d 173 (Tex. 1937) (commissioner's finding on issue of fact conclusive unless clearly illegal, unreasonable, or arbitrary); 46 Tex. Jur. 2d Public Lands §§1-13.   We further believe that the Parks and Wildlife Commission, acting in reliance on this determination, may properly conclude that a "mistake of fact" has occurred within section 11.040, enabling it to refund the $25,000 fee to Jacintoport.   Funds for this purpose were appropriated by the Sixty-Sixth Legislature.   Acts 1979, 66th Leg., ch. 843, at 2698.

It is argued in an accompanying brief that the commission had no authority to charge the fee because (1) the material dredged was analyzed by a geotechnical consulting firm as clay and silt, rather than marl, sand, gravel, shell, or mudshell; and (2) section 86.002 of the Parks and Wildlife Code does not require a permit to be obtained unless the enumerated substances are taken for a purpose "other than that necessary or incidental to navigation or dredging under state or federal authority." See Amdel Pipeline, Inc. v. State, 541 S.W.2d 821 (Tex. 1976).   We need not address these issues, however, because of our conclusion regarding the question you raise.

## S U M M A R Y

Acting in reliance on the General Land Office's determination that the state of Texas never claimed Carpenter's Bayou as state property, the Parks and Wildlife Department may lawfully refund the $25,000 fee it charged the Jacintoport Corporation for dredging materials therein.

Very truly yours,

MARK WHITE
Attorney General of Texas

JOHN W. FAINTER, JR.
First Assistant Attorney General

RICHARD E. GRAY III
Executive Assistant Attorney General

Prepared by Jon Bible
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Susan L. Garrison, Chairman
Jon Bible
Walter Davis
Rick Gilpin
Jim Moellinger
Bruce Youngblood