

# The Attorney General of Texas

March 18, 1985

JIM MATTOX
Attorney General

Supreme Court Building
P. O. Box 12548
Austin, TX. 78711- 2548
512/475-2501
Telex 910/874-1367
Telecopier 512/475-0266

714 Jackson, Suite 700
Dallas, TX. 75202-4506
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905-2793
915/533-3484

1001 Texas, Suite 700
Juston, TX. 77002-3111
713/223-5886

806 Broadway, Suite 312
Lubbock, TX. 79401-3479
806/747-5238

4309 N. Tenth, Suite 6
McAllen, TX. 78501-1685
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205-2797
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

Mr. Charles D. Travis
Executive Director
Texas Parks & Wildlife
    Department
4200 Smith School Road
Austin, Texas    78744

Opinion No.   JM-299

Re:  Constitutionality of article 7467a, V.T.C.S., which authorizes specified municipalities to acquire state streambeds by annexation

Dear Mr. Travis:

You question the constitutionality of an uncodified statute which authorizes certain qualifying municipalities to acquire, through annexations which are effected pursuant to other authority, the beds of state-owned watercourses. Acts 1925, 39th Leg., ch. 155, at 366 (V.T.C.S. art. 7467a). In particular, you express concern about a municipality's annexation of only the beds of watercourses for the sole purpose of assuming ownership of the beds from the state. Your request results from anticipation of conflicts between the Parks and Wildlife Department and municipalities with regard to the department's responsibility to manage and protect the sand and gravel in state-owned stream and river beds.

Article 7467a provides as follows:

> Section 1. The State of Texas hereby relinquishes, quit claims and grants unto all incorporated cities and towns that have a population of forty thousand inhabitants, or more, according to the 1920 census, all of the beds and channels, and also all of the abandoned beds and channels, of all rivers, streams and other channels that are now <u>or that may hereafter be within the present or future corporate limits of such cities or towns,</u> in so far as the beds and channels, and such abandoned channels, of such rivers, streams and other channels may be owned or claimed as the property of said State.

> Sec. 2. The fact that such incorporated cities and towns through which rivers and streams may flow and channels may exist may be hindered in their civic improvements by reason of the State's claim of property rights therein, creates an emergency, and an imperative public necessity

> exists that the constitutional rule requiring bills to be read upon three separate days in each House be suspended and that this Act be placed upon its third reading and final passage and take effect from and after its passage, and it is so enacted. (Emphasis added).

In addition to a general constitutional challenge, you suggest that the first underscored clause, in section 1, as a grant in advance of state-owned property, is constitutionally suspect insofar as it allows the specified municipalities, rather than the state, to determine the amount of state property that the municipalities will "acquire."

As a preliminary matter, we emphasize that article 7467a applies only to "incorporated cities and towns that have a population of forty thousand inhabitants, or more, according to the 1920 census. . . ." V.T.C.S. art. 7467a, §1. For example, because of this requirement, the Texas Supreme Court in Maufrais v. State, 180 S.W.2d 144, 146 (Tex. 1944), held that article 7467a does not extend to the city of Austin because the city lacked the requisite population as of the 1920 census. Consequently, the scope of the act is limited.

Several courts have discussed briefly the general applicability of article 7467a without questioning its validity. See, e.g., Coastal Industrial Water Authority v. York, 532 S.W.2d 949, 951 (Tex. 1976); Maufrais v. State, 180 S.W.2d, at 146; State v. Bradford, 50 S.W.2d 1065, 1078 (Tex. 1932); Hogue v. Glover, 302 S.W.2d 757, 761-762 (Tex. Civ. App. - Waco 1957, writ ref'd n.r.e.). None of the reported cases, however, was called upon to directly address the constitutionality of the act. Nor have any reported cases discussed the nature and extent of the interest relinquished by article 7467a. Consequently, analysis of your request requires consideration of numerous basic principles applicable to submerged lands.

Texas holds its submerged lands as state property in trust for the public. Tex. Const. art. XVI, §59(a); Carrithers v. Terrmar Beach Community Improvement Ass'n., 645 S.W.2d 772 (Tex. 1983), cert. denied, 104 S.Ct. 422; Heard v. Town of Refugio, 103 S.W.2d 728 (Tex. 1937); State v. Bradford, 50 S.W.2d 1065 (Tex. 1932). State ownership extends to the beds of navigable and to certain non-navigable watercourses. San Antonio River Authority v. Lewis, 363 S.W.2d 444, 447 (Tex. 1963); Heard v. Town of Refugio, 103 S.W.2d, at 730-31; see Tex. Water Code §21.001(3). Subject to constitutional limits, the power to control the disposition of state property resides in the legislature. See Conley v. Daughters of the Republic, 156 S.W. 197 (Tex. 1913), reh'g denied, 157 S.W. 937; Attorney General Opinion MW-62 (1979); see also Attorney General Opinion M-356 (1969) (certain reappropriations of property may require constitutional amendment). The legislature may relinquish title to the land beneath public waterways. State v. Bradford, 50 S.W.2d, at 1078; Moore v. Ashbrook, 197 S.W.2d 516, 518

(Tex. Civ. App. - San Antonio 1946, writ ref'd); Attorney General Opinion MW-489 (1982).

Because submerged lands are impressed with a public trust, grants which include the beds of public waterways must be express and are strictly construed against grantees. State v. Bradford, 50 S.W.2d, at 1075; Heard v. Town of Refugio, 103 S.W.2d, at 732; Attorney General Opinions MW-489 (1982); H-881 (1976). The language of article 7467a, however, deals expressly and exclusively with the beds and channels of watercourses that are owned or may be claimed as the property of the state. Therefore, the pivotal questions include (1) whether any constitutional provisions prevent this kind of relinquishment at all or prevent the manner in which the state relinquishes the submerged lands, and (2) the nature and extent of the interest relinquished.

One constitutional provision in particular provides that certain public lands are dedicated to the public free school fund. Article VII, section 2 of the Texas Constitution determines which lands are part of this fund:

> All funds, lands and other property heretofore set apart and appropriated for the support of public schools; all the alternate sections of land reserved by the State out of grants heretofore made or that may hereafter be made to railroads or other corporations of any nature whatsoever; one half of the public domain of the State; and all sums of money that may come to the State from the sale of any portion of the same, shall constitute a perpetual public school fund. (Emphasis added).

See also Tex. Const. art. VII, §§4, 5; State v. Bradford, 50 S.W.2d, at 1073.

The Texas Supreme Court in State v. Bradford, 50 S.W.2d, at 1075, examined section 2 of article VII and concluded that the drafters of the Texas Constitution did not intend article VII, section 2, by its terms, to appropriate the beds of navigable watercourses to the school fund. Thus, article VII, section 2, does not, independent of legislation, automatically place one-half of the beds of public watercourses in the public free school fund. State v. Bradford, 50 S.W.2d, at 1075; Attorney General Opinions H-881 (1976); M-356 (1969); C-90 (1963); V-987 (1950). Moreover, although the legislature has extensive authority to determine what shall initially constitute the school fund's one-half of the public domain, once appropriated, the legislature's action is final. Hogue v. Baker, 45 S.W. 1004, 1005-106 (Tex. 1898); Attorney General Opinions H-881; M-356.

The Bradford court also considered whether the "Settlement Act of February 23, 1900" placed the beds of navigable streams in the permanent school fund. Acts 1900, 26th Leg., 1st C.S., ch. 11, at 29.

After citing numerous statutes which were enacted subsequent to the Act of February 23, 1900 and which dealt expressly with the beds of navigable watercourses, the court concluded that this later legislation was patently inconsistent with the contention that the legislature intended the Act of February 23, 1900 to set apart and grant such public lands to the permanent school fund. 50 S.W.2d, at 1073-75. Consequently, as of the time when article 7467a was enacted, March 30, 1925, the state still held the beds of navigable watercourses in trust for the public; the river bed portion of the public domain had not been dedicated to the permanent free school fund or otherwise granted to any other individual(s) or entity(s).

During the same legislative session which spawned article 7467a, the Thirty-ninth Legislature emphasized that river beds were not dedicated to the permanent school fund by passing article 4026, V.T.C.S., which provided that

> All of the public rivers . . . together with their beds and bottoms, and all of the products thereof, <u>shall continue and remain the property of the State of Texas except in so far as the State shall permit the use of said waters and bottoms.</u> . . . (Emphasis added).

This act was repealed by the Sixty-fourth Legislature, Acts 1975, 64th Leg., ch. 545, §2(a)(2), at 1804, and replaced with substantially the same language, by section 1.011 of the Parks and Wildlife Code. Thus, the provision, as originally enacted in article 4026, is relevant to the validity of article 7467a in light of the provision dealing with the permanent school fund because it shows that this land was not part of the fund. It is also relevant to the nature and extent of the interest relinquished by article 7467a.

The previous discussion demonstrates that the state's stream and river beds had not been dedicated to the permanent school fund prior to the enactment of article 7467a. Because article 7467a operates to relinquish state river beds at various times to qualifying municipalities as those cities grow, dedications to the permanent school fund made subsequent to the enactment of article 7467a are also relevant. Later dedications, however, do not invalidate article 7467a; rather, they affect the nature and extent of the interest relinquished. As will be seen, they affect the extent of the interest relinquished because at dates subsequent to the passage of article 7467a, the legislature did dedicate different portions of the estate in its river beds to the permanent school fund. Article 7467a purports only to relinquish the interest in state stream and river beds which "may be owned or claimed as the property of said State." Thus, the act cannot and does not operate to relinquish an interest of which the state has otherwise disposed.

In 1921, prior to the enactment of article 7467a, the legislature enacted a provision which (1) transferred all unexpended money in the state treasury at that time to the credit of the Game, Fish and Oyster Fund which had been received as or from royalty on oil and gas leases issued upon river beds to the available public free school fund, and (2) dedicated all sums of money received thereafter as royalty upon oil and gas leases from leases issued upon river beds to the available public free school fund. Acts 1921, 37th Leg., ch. 55. The interest relinquished by article 7467a is subject to and limited by this royalty interest.

Similarly, subsequent to the passage of article 7467a and subsequent to the Texas Supreme Court's decision in Bradford, the legislature dedicated all the income from the mineral development of the state's river beds to the permanent school fund. Acts 1935, 44th Leg., ch. 140, §2, repealed by Acts 1969, 61st Leg., ch. 51, at 3025. Section 15.01(a)(6) of the Texas Education Code replaced the provision and provides for the same dedication of the income from the mineral development of submerged lands.

In 1939, the legislature severed the surface and mineral estates in the state's river beds and granted the entire mineral estate in the state's river beds to the permanent school fund. Acts 1939, 46th Leg., ch. 3, at 465 (V.T.C.S. art. 5421c-3, §2, now repealed). The provision was repealed in 1977, and replaced with section 11.041(a)(1) of the Texas Natural Resources Code. Acts 1977, 65th Leg., ch. 871, at 2689. The state may cause such a horizontal severance of the surface and mineral estates in its submerged lands. See generally State v. Aransas Dock and Channel Co., 365 S.W.2d 220, 222 (Tex. Civ. App. - San Antonio 1963, writ ref'd).

The interest relinquished by article 7467a does not include the royalty interest dedicated to the available public free school fund in 1921. Similarly, any relinquishment which became effective or which may become effective upon the expansion of the boundaries of qualified cities and towns, as envisioned by article 7467a, subsequent to the grant in 1935 of the mineral estate income from river beds to the permanent fund and to the grant in 1939 of the mineral estate itself in river beds to the permanent fund, does not include these interests. Once the legislature has dedicated land to the permanent school fund, it cannot reappropriate the land without a constitutional amendment. Hogue v. Baker, 45 S.W. 1004; Eyl v. State, 84 S.W. 607, 611 (Tex. Civ. App. 1904, writ ref'd); Attorney General Opinions H-881; M-356.

No other statutes grant a greater interest in the state's submerged river bed lands to another entity or individual. But see Tex. Nat. Res. Code §11.041(a)(3) (Texas-Gulf of Mexico tidelands grant to school fund not limited to mineral estate and could include tidewater portions of river beds); see, e.g., Attorney General Opinions H-881 (1976); C-90 (1963). You especially express concern about sand and gravel. Sand and gravel are not, however, minerals within the meaning

of the statutes recodified in section 11.041 of the Natural Resource Code.  See Moser v. United States Steel Corporation, 676 S.W.2d 99, 102 (Tex. 1984) reh'g overruled; Heinatz v. Allen, 217 S.W.2d 994, 997 (Tex. 1949).  Thus, these surface substances are excluded from dedication of the mineral estate to the public free school fund.  See Attorney General Opinion C-90.  Control of these substances depends upon other statutory provisions to be discussed later.

Two other constitutional provisions deserve mention at this point.  Article III, section 51 of the Texas Constitution denies the legislature the power to make any grant of public money to any individual or entity.  Section 59a of article XVI indicates that the conservation, development, and preservation of all natural resources related to rivers and streams in the state are declared public rights and duties.

As indicated previously, Texas courts have held that the legislature may relinquish title to the land beneath public watercourses.  State v. Bradford, 50 S.W.2d, at 1078; Moore v. Ashbrook, 197 S.W.2d at 518; Attorney General Opinion MW-489.  Occasionally, the public use and enjoyment of property under navigable waters "may be promoted and increased, by allowing portions of it to become private property."  Coastal Industrial Water Authority v. York, 532 S.W.2d, at 953 (quoting from City of Galveston v. Menard, 23 Tex. 349, 393 (1859).

The Texas Supreme Court in State v. Bradford, considered both article III, section 51 and article XVI, section 59a, in the context of the "Small Bill," article 5414a, V.T.C.S., 50 S.W.2d, at 1076-77.  Analysis of the court's treatment of these provisions is helpful to the case at hand.  The "Small Bill" is a retrospective act which "validated" the titles to lands whose surveys had been made across streams subsequently claimed to be navigable.  With regard to article III, section 51, the court held that the "Small Bill" was valid because the state had received and retained consideration for the patents and awards validated by the act.  50 S.W.2d, at 1077.

Similarly, the act was expressly held not to contravene section 59a of article XVI because the act

> reserves to the state, and the public generally, and excepts from the operation of the act, the natural resources located in the river beds affected and, by implication, the necessary accompanying rights of ingress and egress to those resources, and all other rights necessary to their proper use and development.

50 S.W.2d, at 1076.  The court indicated, generally, that

> the state has authority to validate the titles of the land lying in the beds of navigable streams

> issued in good faith, <u>reserving unto the state for the use of the public all rights reserved by the statutory and constitutional provisions pertaining to navigable streams.</u> . . . (Emphasis added).

50 S.W.2d, at 1077.

Application of these principles to the validity of article 7467a under article III, section 51 and article XVI, section 59a is roughly analogous. We conclude that the public interest protected by both of these provisions is preserved by the fact that the legislature intended that the submerged lands relinquished by article 7467a remain impressed with a public trust when held by qualifying municipalities. The legislature will not be presumed to have intended an unconstitutional result.

The language employed by the legislature in article 7467a manifests the legislative intent that the interest in state stream and river beds which is relinquished by article 7467a does not amount to an unrestricted grant of fee simple title. Section 1 of the act contains the operative words "relinquish" and "quitclaim." By analogy, under Texas' law on deeds, a quitclaim is based on the theory that the grantor has either no title or imperfect title but that the grantor nevertheless possesses some present interest in the property, undefined in its nature, that is released by the quitclaim. See <u>Richardson v. Levi</u>, 3 S.W. 444 (Tex. 1887); <u>Green v. West Texas Coal Mining & Developing Co.</u>, 225 S.W. 548 (Tex. Civ. App. – Austin 1920, writ ref'd); <u>Breen v. Morehead</u>, 126 S.W. 650 (Tex. Civ. App. 1910), aff'd, 136 S.W. 1047. Moreover, section 2 of the act indicates that the purpose of the act is that qualified cities will not "be hindered in their civic improvements by reason of the State's claim of property rights therein. . . ." The language used in both sections of article 7467a, interpreted in light of the rules of construction for grants of submerged land, that grants of public land be strictly construed against grantees, evidences the legislative intent to relinquish state- owned stream and river beds which lie within the boundaries of qualifying municipalities for public purposes only. Thus, the title relinquished remains impressed with a public trust despite the lack of an express reservation. See Attorney General Opinion MW-489 (1982); Tex. Water Code §5.021 (public has continuing rights in <u>waters</u> of navigable watercourses); <u>Carrithers v. Terrammar Beach Community Improvement Ass'n.</u>, 645 S.W.2d, at 772; see also Parks and Wild. Code, §1.011(c) (discussed <u>infra</u>).

You suggest that article 7467a is also constitutionally suspect because it allows the specified municipalities, rather than the state, to determine the amount of state property that the municipalities will acquire. The Texas Constitution, in article III, section 1, and in article I, section 28 prohibits the delegation of legislative power to make or suspend law. Nevertheless, Texas law consistently recognizes a distinction between a delegation of legislative power to make a law

and the discretionary exercise of a power conferred by a law. See Attorney General Opinions MW-383 (1981); MW-11 (1979).

Both article 7467a and the annexation statutes, see, e.g., V.T.C.S. art. 970a and art. 1183 et seq., provide sufficient authority and standards to guide any power given to qualifying municipalities to "acquire" state property by state relinquishment upon municipal annexation. We emphasize that article 7467a does not itself authorize annexation; it merely relinquishes state-owned stream and river beds when a city's boundaries are expanded by annexations effected pursuant to other authority. See, e.g., art. 970a and art. 1183 et seq. Annexation powers are limited in several ways. For example, with regard to home rule cities, article 1175 requires that annexed land be adjacent to the city and not within another city. City of Longview v. State ex rel. Spring Hill Utility District, 657 S.W.2d 430 (Tex. 1983). Similarly, section 7 of article 970a, applies the same adjacency test to all cities. Fox Development Company v. City of San Antonio, 468 S.W.2d 338, 339 (Tex. 1971).

You also express concern about a particular municipality's annexation of only the beds of watercourses for the sole purpose of assuming ownership of the beds from the state. Article 7467a was not, however, intended to authorize annexations of only river beds. As indicated, article 7467a does not itself authorize annexation; its purpose was to prevent hindrance of qualifying cities' civic improvements caused by the state's ownership of river beds within municipal boundaries. V.T.C.S. art. 7467a, §2. Nevertheless, the long-standing rule in Texas is that, other than limits imposed by the Voting Rights Act, the only limit on the power of a city to annex additional territory is that it be adjacent to the city and not within the boundaries of another municipality. Fox Development Company v. City of San Antonio, 468 S.W.2d, at 339. Article 970a, in section 7 B-1, also imposes a width limit, prohibiting too-narrow strip annexations. Further, certain unusual strip annexations have been held invalid on the basis of a lack of adjacency. See, e.g., City of West Orange v. State ex rel. the City of Orange, 613 S.W.2d 236 (Tex. 1981). The adjacency of a particular annexation depends upon facts which we cannot determine in the opinion process.

Moreover, articles 1183-87, V.T.C.S., specifically authorize limited purpose annexations of only navigable streams for a specified distance outside of a city's boundaries. See City of Port Arthur v. Jefferson County Fresh Water Supply District No. 1, 596 S.W.2d 553, 555 (Tex. Civ. App. - Beaumont 1980, writ ref'd n.r.e.). The Municipal Annexation Act, article 970a, did not repeal articles 1183-89. Id. at 556. Articles 1183-87 were expressly intended as limited purpose annexation statutes which do not confer general regulatory powers over subject land. City of Nassau Bay v. Winograd, 582 S.W.2d 505, 508 (Tex. Civ. App. - Houston [1st Dist.] 1979, writ ref'd n.r.e.).

Your request regarding the constitutionality of article 7467a stems from concern over potential conflicts between the Parks and Wildlife Department and municipalities with regard to the department's responsibility under chapter 86 of the Texas Parks and Wildlife Code to manage and protect the sand and gravel found in state-owned streambeds. Because the submerged lands relinquished to qualifying cities by article 7467a are impressed with a public trust, the cities do not have unrestricted power in the first place over the river beds within their boundaries. See Attorney General Opinion MW-489. Moreover, the legislature has expressly placed control of sand and gravel within the jurisdiction of the Parks and Wildlife Department.

As indicated previously, during the same legislative session which resulted in article 7467a, the Thirty-ninth Legislature passed article 4026, which reserved to the state the beds of all public rivers and placed regulation of such beds in what is now the Texas Parks and Wildlife Department. The provision was repealed in 1975, and replaced by section 1.011(c) of the Parks and Wildlife Code. Acts 1975, 64th Leg., ch. 545, §2(a)(2), at 1804. Section 1.011(c) provides, in part:

> All the beds and bottoms and the products of the beds and bottoms of the public rivers . . . are the property of this state. The state may permit the use of the waters and bottoms and the taking of the products of the bottoms and waters. (Emphasis added).

Section 1.011(d) provides:

> The Parks and Wildlife Department shall regulate the taking and conservation of fish, oysters, shrimp, crabs, turtles, terrapins, mussels, lobsters, and all other kinds and forms of marine life, or sand, gravel, marl, mud shell, and all other kinds of shell in accordance with the authority vested in it by this code. (Emphasis added).

See also Parks and Wild. Code §86.001 et seq.

Where the legislature intends a particular patent or grant, to authorize a political subdivision to exercise control over the products of submerged lands or flats, the legislature has expressly so provided. See Parks and Wild. Code §86.012; Texas Parks and Wildlife Department v. Champlin Petroleum Company, 616 S.W.2d 668 (Tex. Civ. App. - Corpus Christi 1981, writ ref'd n.r.e.); see also Amdel Pipeline Inc. v. State, 541 S.W.2d 821 (Tex. 1976); Attorney General Opinion MW-367 (1981). The legislature has provided counties and cities with a procedure for using the products of river beds without

payment, see Parks and Wild. Code §§86.013, 86.014, but has not given them jurisdiction over such products.

Consequently, we conclude that article 7467a was not intended to confer upon qualifying cities the power to control the products of the river beds relinquished by the act. The act was necessary to prevent property law hindrance in civic improvements caused by the state holding title to river beds which are located within municipal boundaries. Although such cities hold the authority to make certain public improvements in, over, and around the river beds within their boundaries, their power is not unlimited. Just as they cannot alienate land impressed with a public trust without express legislative authority, see Attorney General Opinion MW-489, they cannot alienate the products of land impressed with a public trust without express legislative authority.

## S U M M A R Y

Subject to the interest of the public free school fund in the mineral estate in river beds and channels which are held by the state in trust for the public, article 7467a, V.T.C.S., constitutionally relinquishes title to the portions of river beds and channels which certain qualified cities may acquire through annexation effected pursuant to other authority. Such submerged lands remain impressed with a public trust, and products, including gravel, may not be removed therefrom except for civil improvement projects and cannot be exploited commercially by a city without further express legislative authority.

Very truly yours

**JIM MATTOX**
Attorney General of Texas

TOM GREEN
First Assistant Attorney General

DAVID R. RICHARDS
Executive Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Jennifer Riggs
Assistant Attorney General

p. 1354

APPROVED:
OPINION COMMITTEE

Rick Gilpin, Chairman
Jon Bible
Colin Carl
Susan Garrison
Tony Guillory
Jim Moellinger
Jennifer Riggs
Nancy Sutton