Mr. Charles D. Travis Executive Director Texas Parks and Wildlife Department 4200 Smith School Road Austin, Texas 78744
Re: Exemption of lessees of the General Land Office from the permitting requirements for removal of sand, shell, gravel, or marl within state tidewater limits (RQ-1910)
Dear Mr. Travis:
Parks and Wildlife Code sections 86.001 and 86.002(a) make provisions with respect to the authority of the Parks and Wildlife Commission to manage and control marl, sand, gravel, shell, and mudshell. Section 86.001 provides:
 The commission shall manage, control, and protect marl and sand of commercial value and all gravel, shell, and mudshell located within the tidewater limits of the state, and on islands within those limits, and within the freshwater areas of the state not embraced by a survey of private land, and on islands within those areas.
Section 86.002(a) provides:
 No person may disturb or take marl, sand, gravel, shell, or mudshell under the management and protection of the commission or operate in or disturb any oyster bed or fishing water for any purpose other than that necessary or incidental to navigation or dredging under state or federal authority without first having acquired from the commission a permit authorizing the activity. (Emphasis added.)
See also Parks Wild. Code § 11.001(1) (defining `commission' as used in sections 86.001 and 86.002 as the Parks and Wildlife Commission).
You ask whether a certain holder of an easement from the School Land Board must obtain from the commission the permit required by section 86.002(a) in order to conduct dredging operations pursuant to its easement. A brief submitted by the General Land Office in connection with your request describes the situation that prompted your request as follows:
 On May 9, 1989, the School Land Board pursuant to Chapter 33 of the Texas Natural Resources Code granted to Lone Star Aquaculture, Inc. a coastal easement for the installation on submerged permanent school fund land in Matagorda Bay of a buried water intake pipe to supply seawater to an upland aquaculture facility. Lone Star owns the leasehold estate in the adjoining littoral property, which is permanent school fund land leased to Lone Star under Chapter 51 of the Texas Natural Resources Code. As an incident of installation of the pipe as authorized in the easement, it was necessary for Lone Star to dredge the bay bottom. Lone Star is not removing any sand, shell, gravel or marl for sale or for any other purpose and is replacing the sand, shell, gravel and marl over the pipeline once constructed.
 * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *
 The School Land Board and the General Land Office contend . . . that since the dredging was conducted pursuant to state authority (a School Land Board coastal easement granted pursuant to Chapter 33 of the Natural Resources Code), the easement holder is exempt, pursuant to Section 86.002(a) of the Parks and Wildlife Code, from having to obtain a Chapter 86 sand, gravel, and marl permit.
We discern the focus of your inquiry to be whether the disturbance of marl, sand, gravel, shell, and mudshell necessary or incidental to dredging operations under the easement in question would be "necessary or incidental to navigation or dredging under state or federal authority" within the meaning of section 86.002(a) and thus exempt from the section's requirement of a permit from the Parks and Wildlife Commission.
The School Land Board is an executive agency of the state. Nat. Res. Code § 33.011. It is composed of the commissioner of the General Land Office and appointees of the governor and the attorney general, and is assisted in the performance of its duties by the staff of the General Land Office. Id. §§ 32.012, 33.012, 33.013, 33.051. Section 33.111(a) of the Natural Resources Code provides:
 The board may grant easement rights to the owner of adjacent littoral property authorizing the placement or location of a structure on coastal public land for purposes connected with the ownership of littoral property.
The brief submitted by the General Land Office indicates that the easement holder in question is an "owner of adjacent littoral property" within the meaning of section 33.111 by virtue of a leasehold interest acquired from the General Land Office under chapter 51 of the Natural Resources Code.
It would also appear that the granting of the easement from the School Land Board for "dredging on submerged state land for the installation of a water intake pipe to supply water to an aquaculture facility," as recited in the copy of the easement document you attached to your request, is within the School Land Board's authority under section 33.111 for granting easements for the "location of a structure on coastal public land for purposes connected with the ownership of littoral property." (Emphasis added.) "Structure" as used in chapter 33 is defined in section33.004(10) of the Natural Resources Code to mean "any structure, work, or improvement constructed on, affixed to, or worked on coastal public land, including . . . excavations."
We conclude in response to the question you present that the holder of such easement is not required under Parks and Wildlife Code section 86.002(a) to obtain a permit from the Parks and Wildlife Commission for its disturbances to, or taking of, marl, sand, gravel, shell, or mudshell necessary or incidental to its dredging operations for installation of the water intake pipe pursuant to its easement for said operations granted by the School Land Board.
The Texas Supreme Court in Amdel Pipeline v. State of Texas,541 S.W.2d 821 (Tex. 1976) considered the provisions of section 86.002(a) in connection with whether a holder of a permit from the United States Army Corps of Engineers for dredging for navigational purposes in the Neches River Channel, a federal navigation project, was required to obtain a permit from the Parks and Wildlife Commission. The court noted that the provisions of section 86.002(a) had not changed substantially since their original enactment in 1911. 541 S.W.2d at 824, 825; see Acts 1911, 32d Leg., ch. 68.[1]
The court in Amdel held that the dredging operations by the company, performed pursuant to its permit from the Army Corps of Engineers, were ones "necessary or incidental to navigation under . . . federal authority" within the meaning of section 86.002(a) and thus exempt from the section's permit requirement. We think that a court would similarly find that disturbances of marl, sand, gravel, shell, and mudshell by the easement holder in question here are exempt from said permit requirement if in fact the disturbances are necessary or incidental to its dredging operations pursuant to its easement from the School Land Board.
The Amdel court recognized, and the parties appear to have agreed, that the company's operations were "under federal authority" within the meaning of section 86.002(a). See Amdel, at 826. In the present case, we think the easement holder's operations, pursuant to its easement from the School Land Board, would be found by a court to be "under state authority" within the meaning of that section.
The Corps of Engineers permittee in Amdel held a permit for dredging for navigational purposes. We do not think the fact that the School Land Board easement holder's easement is for dredging for non-navigational purposes takes it out of the section 86.002(a) exception. The exception is for "navigation or dredging under federal or state authority." Webster's defines "dredge" to mean "dig, gather, or pull out" and "to deepen (as a waterway with a dredging machine)." Webster's Ninth New Collegiate Dictionary 382 (1985). The ordinary meaning of dredging does not appear to be limited to dredging for navigational purposes. We do not think the legislature would have used the disjunctive "or" in the phrase "navigation or dredging" had it intended the exception to apply only to operations for navigational purposes.
Our conclusion here is supported by Attorney General Opinion M-84 (1967), cited with approval in Amdel, at 826. In responding to the question whether the Parks and Wildlife Department had "authority to regulate or limit disturbances in submerged land areas leased by the School Land Board to individuals," the opinion stated that the Parks and Wildlife Department had authority to manage, control, and protect all marl, sand, gravel, shell, and mudshell within the areas defined by V.T.C.S. article 4051 (now section 86.001 of the Parks and Wildlife Code), with the exception of
 the marl, sand, [etc.], . . . that are disturbed for an authorized navigational purpose . . . or being disturbed by a lessee of the School Land Board in carrying out the purpose of the lease (whether for oil or gas production or other commercial or industrial use) and which disturbance of the marl, etc. is incidental to such purposes and reasonably necessary in carrying out such purposes.[2]
Attorney General Opinion M-84, at 6. We think the fact that the operations here are performed pursuant to an easement from the School Land Board rather than a lease, as in Attorney General Opinion M-84, does not make the operations any the less "under state authority" within the meaning of section 86.002(a). See also Attorney General Opinions C-90 (1963) (submerged land leased for oil and gas development); WW-150 (1957) (disturbances on submerged land patented to a navigation district).
You point in your brief to the provisions of section 33.005(a) of the Natural Resources Code, which provides:
 This subchapter does not repeal the following provisions of the Parks and Wildlife Code: Chapters 83 and 86, Subchapter A of Chapter 46, Subchapter A of Chapter 76, Subchapter D of Chapter 76, Subchapter B of Chapter 81, Subchapter G of Chapter 82, Subchapter C of Chapter 216, or Sections 66.101, 66.107, 66.112 through 66.118, 66.205, 76.031 through 76.036, 78.001 through 78.003, 81.002, 136.047, 184.024, 201.015, or 335.025.
Apart from the fact that the provisions of section 33.111 of the Natural Resources Code authorizing the School Land Board to grant easement rights in coastal lands appear in subchapter D of chapter 33 while section 33.005(a) refers to subchapter A as effecting no repeal of, inter alia, chapter 86 of the Parks and Wildlife Code, we also note that our construction here of section33.111 of the Natural Resources Code, with those of section86.002(a) of the Parks and Wildlife Code, works no "repeal" of the latter provisions. Our construction rather gives effect to the provision of section 86.002(a) that "navigation or dredging under federal or state authority" is excepted from that section's permit requirement.
You also argue in your brief that finding the easement holder's operations here to fall within the section 86.002(a) exception would "allow the exception to swallow the rule." You say that virtually all of the activities subject to regulation under chapter 86 currently require a permit from the United States Army Corps of Engineers under section 404 of the Clean Water Act,33 U.S.C. § 1344. We caution that we do not address here whether holders of section 404 permits or other authorization permits would fall within the section 86.002(a) exception for "navigation or dredging under federal or state authority," but confine our opinion here to the facts presented. We note, however, that prior to the adoption of the predecessor provisions of section 86.002 in 1911, the public was free generally to disturb or remove bottom materials from coastal public land without supervision. See Goar v. City of Rosenberg, 115 S.W. 653 (Tex.Civ.App. 1909, no writ); Attorney General Opinion WW-151 (1957). It is possible that since 1911 federal and state regulation over coastal lands has grown to the point where anyone removing or disturbing such bottom materials must have obtained a federal or state authorization, therefore potentially bringing them within the section 86.002(a) exception. However, whether the exception to the section 86.002(a) permit requirement for "navigation or dredging under federal or state authority" now needs to be redrawn in light of such developments is a matter for the legislature.
 SUMMARY
The holder of an easement from the School Land Board for dredging for installation of a water intake pipe on submerged state land is not required, under Parks and Wildlife Code section 86.002(a), to obtain a permit from the Parks and Wildlife Commission for disturbances of marl, sand, gravel, shell, or mudshell necessary or incidental to its dredging operations pursuant to such easement.
Very truly yours,
 Jim Mattox Attorney General of Texas
 Mary Keller First Assistant Attorney General
 Lou McCreary Executive Assistant Attorney General
 Judge Zollie Steakley Special Assistant Attorney General
 Renea Hicks Special Assistant Attorney General
 Rick Gilpin Chairman Opinion Committee
 Prepared by William Walker Assistant Attorney General
[1] The Amdel court traced the section 86.002(a) permit requirement exception for navigation or dredging under federal or state authority to a penal provision of the 1911 act. The court stated, however, that it did not construe the provision "to have the isolated effect of telling us whom [sic] shall suffer penal sanctions." 541 S.W.2d at 826.
 The caption of the 1911 Act refers to `penalties for the violation of this Act' — indicating that there is no violation of any part of the Act where one, who removes marl and sand, does so in the course of operations that are necessary or incident to navigation or dredging under state or federal authority.
Id.
[2] This conclusion of Attorney General Opinion M-84 was based on a reading of the provisions then found in article 976 of the Penal Code. Those provisions were incorporated without substantive change in the Parks and Wildlife Code in 1975, as section 86.002. Acts 1975, 64th Leg., ch. 545, § 1, at 1405. In 1985, specification as to the penalties for violating the provisions of section 86.002 were taken out of section 86.002 and placed in section 86.020. Acts 1985, 69th Leg., ch. 267, art. 3, § 107, at 1294.